Danny Lee McQUARTERS, Appellant,

v.

The STATE of Texas, State.

No. 2–00–198–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 20, 2001.

Scott H. Palmer, Adam Seidel, Dallas, for Appellant.

Bruce Isaacks, Criminal District Attorney, Charles E. Orbison, Earl Dobson, Rick Daniel, and Jimmy Angelino, Assistant District Attorneys, Denton, for Appellee.

Panel B: LIVINGSTON, DAUPHINOT and WALKER, JJ.

## OPINION

LIVINGSTON, Justice.

### INTRODUCTION

Danny Lee McQuarters appeals his conviction for felony possession of five to fifty pounds of marijuana. The jury found appellant guilty. The court assessed punishment at eight years' confinement. Appellant complains of the reasonableness of the search and challenges the legal sufficiency of the evidence to sustain his conviction. We reverse and remand.

### BACKGROUND

Shortly before midnight on April 6, 1998, Officer Kirk Beauchamp observed a car driven by appellant traveling north on Interstate 35. Officer Beauchamp was a narcotics interdiction officer for the North Central Texas Narcotics Task Force. He had been a narcotics interdiction officer for four years. Interstate 35 consists of two lanes in the northbound direction and two lanes in the southbound direction. Appellant was driving north in the left lane. Officer Beauchamp first noticed appellant because he was traveling at a slow speed in the left lane, the passing lane, with no other cars in the vicinity. He also saw appellant cross the left lane stripe nearest to the center median twice. At this point, Officer Beauchamp also suspected that appellant was either falling asleep at the wheel or possibly intoxicated, so he stopped appellant.

Officer Beauchamp approached appellant's car and asked him to step out. He explained to appellant that he stopped him for the traffic violations and because he thought he might be falling asleep or intoxicated. Officer Beauchamp quickly concluded that appellant was not intoxicated because appellant did not smell of alcohol or exhibit any other signs of intoxication. While questioning him, Officer Beauchamp

noticed that appellant was nervous: he could not make eye contact, his hands were shaking, and his breathing was shallow. He also learned that the car appellant was driving was rented. The rental agreement identified someone other than appellant or his passenger as the authorized driver of the car.

Officer Beauchamp also questioned the passenger. Her description of their recent visit to Dallas conflicted with appellant's. Officer Beauchamp testified that he did not smell marijuana in the car while he was questioning the passenger from the open passenger window. He then told appellant that he was going to write him a warning then let him go. He returned to his patrol car and checked appellant's name and date of birth in the computer records and discovered appellant's driver's license was revoked. While in his car, he spoke into his microphone describing his observations about the rental agreement and conflicting stories, and wrote two warnings for the traffic violations. Officer Beauchamp waited for a back-up officer to arrive then re-approached appellant. When the back-up officer arrived Officer Beauchamp turned off his microphone temporarily. He then approached appellant, with his microphone back on, issued the two warnings and returned the rental agreement to appellant. After issuing the warnings, Officer Beauchamp explained to appellant that his driver's license had been revoked and that the passenger would have to drive from then on. Next, he asked appellant if there was anything of an "illegal nature" in the car. Appellant said, "No," and Officer Beauchamp asked for consent to search the car. Appellant refused. He then told appellant he would be right back. As Officer Beauchamp walked toward his patrol car appellant said something to him to which Officer Beauchamp responded, "No, stay right here."

At this point in the stop, Officer Beauchamp "felt like" he had a reasonable suspicion that appellant had narcotics in the car, so he retrieved his narcotics search canine from his patrol car. At the beginning of the olfactory search by the dog, Officer Beauchamp's microphone shut off so that no sound was recorded. The dog sniffed around the car and eventually alerted to the passenger door jam. Officer Beauchamp then searched the car and recorded what he found through his microphone which he turned back on when he started searching the passenger compartment of the car. He discovered a large plastic sack in the trunk. He found about nine to ten pounds of marijuana separated in ziploc bags inside the sack. The sack was wrapped in a jacket that would fit appellant. Officer Beauchamp found a release slip from a medical institution and a prescription card bearing appellant's name inside a pocket of the jacket. The trunk also contained two sets of men's clothing and two sets of women's clothing. The men's clothing was consistent with appellant's size. The passenger stated that the clothing in the trunk belonged to appellant and her.

Prior to trial, appellant filed a motion to suppress the marijuana. The court heard his motion and denied it. The jury found appellant guilty, and he now appeals.

## DISCUSSION

### Investigative Detentions

In appellant's first point he complains that the trial court erred by denying his motion to suppress because the search of the car he was driving violated the Fourth Amendment of the United States Constitution. Specifically, appellant argues that the initial stop by Officer Beauchamp was not justified and that his continued detention was not based upon reasonable suspicion.

We review the denial of a motion to suppress by giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim. App.2000). When the trial court does not make explicit findings of historical facts, we review the evidence in the light most favorable to the trial court's ruling. *Id.* at 327–28. In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim. App.), *cert. denied,* 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996). However, this general rule is inapplicable where the suppression issue has been consensually relitigated by the parties during trial on the merits. *Id.* Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and consideration of relevant trial testimony is also appropriate in our review. *Id.* Here, appellant objected at trial and re-urged his motion to suppress when the State offered the physical evidence found in the trunk. Although the trial court summarily denied the objection and admitted the marijuana, we will only consider the evidence adduced at the suppression hearing.

Law enforcement officers may stop and briefly detain persons suspected of criminal activity if the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Davis v. State,* 947 S.W.2d 240, 244 (Tex. Crim.App.1997).

"Reasonable suspicion" exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. The reasonable suspicion determination is made by considering the totality of the circumstances.

*Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim.App.2001) (footnotes omitted). In conducting this totality of the circumstances determination, we give almost total deference to the trial court in determining what the actual facts are, and then we review de novo whether those facts are sufficient to give rise to a reasonable suspicion. *Id.*

Appellant argues that the initial stop was not justified because the evidence failed to show that he violated either of the traffic laws Officer Beauchamp identified as his reasons for stopping appellant. First, the State was not required to prove appellant violated a traffic law. The State only needed to elicit testimony that Officer Beauchamp knew sufficient facts to reasonably suspect that appellant had violated a traffic law. *See id.* Secondly, assuming Officer Beauchamp's testimony may not have established a reasonable suspicion that appellant had violated a traffic law, it did raise sufficient facts to justify a stop based on reasonable suspicion that appellant was intoxicated. *See Gajewski v. State,* 944 S.W.2d 450, 453 (Tex.App.— Houston [14th Dist.] 1997, no pet.). Therefore, Officer Beauchamp was justified in stopping appellant.

During an investigative traffic stop, an officer is entitled to request infor-

mation concerning the driver's license, ownership of the vehicle, the driver's insurance information, the driver's destination, and the purpose of the trip. *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.—Fort Worth 1998, pet. ref'd). Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Davis,* 947 S.W.2d at 245. Generally, a sniff of the outside of an automobile by a trained canine is not a search within the meaning of the Fourth Amendment. *Mohmed,* 977 S.W.2d at 628; *see also United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983); *Crockett v. State,* 803 S.W.2d 308, 310 n. 5 (Tex.Crim.App.1991). Thus, the temporary detention of an automobile to allow an olfactory inspection by a police dog trained to detect the odor of illegal drugs is not offensive to the Fourth Amendment when based on a reasonable suspicion that the automobile contains narcotics. *Mohmed,* 977 S.W.2d at 628; *see also Crockett,* 803 S.W.2d at 311.

Appellant concedes that an olfactory inspection by a police dog does not offend the Fourth Amendment. His complaint focuses on the reasonableness of the continued detention. Officer Beauchamp issued two warnings to appellant, but continued to detain him after telling him he would be free to leave. Officer Beauchamp testified that he decided not to arrest appellant for driving with a revoked license. It was not until appellant refused consent to search the car that Officer Beauchamp ordered appellant not to leave and retrieved his police dog. Appellant argues that Officer Beauchamp concluded his investigation of the traffic stop when he issued the two warnings, and at that time he did not have sufficient facts to create a reasonable suspicion that appel-

lant was hiding narcotics. Appellant further argues that because Officer Beauchamp did not have a reasonable suspicion of criminal activity it was unreasonable to continue to detain him for the canine search.

The State argues that Officer Beauchamp had a reasonable suspicion that appellant was transporting drugs and therefore could continue to detain appellant. The State cites an opinion from the Texarkana Court of Appeals in support of its position. *See Powell v. State,* 5 S.W.3d 369, 378 (Tex.App.—Texarkana 1999, pet. ref'd), *cert. denied,* 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000). In *Powell,* two police officers stopped the defendant for a traffic violation. During the traffic stop, the police officers developed a reasonable suspicion that Powell was carrying drugs. After issuing a citation for the traffic violation, the police continued to detain Powell for further investigation. The police based their reasonable suspicion on Powell's nervousness, his statements that conflicted with those of his passengers, his lying about not having any prior arrests, his lack of registration for the car, and the fact that one passenger had a prior drug offense. *Id.* Further, one of the officers testified that these factors were common to drug carriers. The Texarkana court found these factors sufficient to establish a reasonable suspicion to continue to detain Powell for further investigation of a drug-related offense. *Id.*

*Powell* relied partly on our opinion in *Mohmed. Id.* at 377 (citing *Mohmed,* 977 S.W.2d at 628). *Mohmed* involved a similar traffic stop for failure to maintain a single lane. *Mohmed,* 977 S.W.2d at 626. While the officer was writing a warning for the offense, Mohmed mentioned that the car was rented. *Id.* The officer went to the passenger side of the car and asked the passenger for the rental papers.

While standing by the passenger door the officer smelled the odor of burnt marijuana coming from the car. *Id.* The officer retrieved his police dog to conduct an olfactory search of the outside of the car. The dog detected the presence of drugs which were later found in the trunk. *Id.* We held the smell of marijuana created a reasonable suspicion for the officer to continue to detain Mohmed for an investigation of drug possession. *Id.* at 628.

While the case before us is similar to *Powell* and *Mohmed,* there are important distinctions preventing us from reaching the same conclusion. Here, Officer Beauchamp suspected appellant of hiding narcotics in the car because he was very nervous during the traffic stop; he and his passenger gave conflicting accounts about how long they had been visiting Dallas; and he drove a rental car not issued to him or his passenger. Officer Beauchamp also testified that these factors are common in cases where the driver of a car is transporting illegal drugs. Unlike *Powell,* however, Officer Beauchamp did not catch appellant lying or discover any prior drug offenses. Also, unlike *Mohmed,* Officer Beauchamp testified that he did not smell marijuana coming from the car while standing at the passenger door.

The State also cites to several other cases from the various intermediate courts of appeals to prove Officer Beauchamp had a sufficient basis to form reasonable suspicion. *See Simpson v. State,* 29 S.W.3d 324, 329 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd) (appellant exited car immediately after being stopped without being asked and approached patrol car, gave abrupt and unsure answers to officer's questions, was nervous, and misstated criminal history); *Martinez v. State,* 29 S.W.3d 609, 612 (Tex.App.—Houston [1st Dist.] 2000, pet. filed) (appellant and passenger told conflicting stories, and appel-

lant did not know passenger's name); *Zervos v. State,* 15 S.W.3d 146, 152–53 (Tex. App.—Texarkana 2000, pet. ref'd) (appellant was extremely nervous, pacing, fidgeting, gave contradictory statements). The detentions in these cases were reasonable because the officer was in the midst of conducting the investigation for the initial traffic stop. However, in this case Officer Beauchamp had dismissed his suspicion that appellant was intoxicated and issued two warnings for the traffic violations, thus concluding the purpose of the initial stop. *See Davis,* 947 S.W.2d at 245. Also, he was no longer inquiring into the areas permitted by *Mohmed* during a traffic stop. *See Mohmed,* 977 S.W.2d at 628. Therefore, before issuing the warnings Officer Beauchamp needed sufficient facts to reasonably suspect appellant was hiding narcotics to permit further detention for the canine search.

■ The confusion associated with the rental car agreement would most likely indicate that the vehicle was stolen, as opposed to containing drugs. *See United States v. Dortch,* 199 F.3d 193, 199 (5th Cir.1999). But Officer Beauchamp did not testify that he was investigating a stolen vehicle. Also, appellant's nervousness is a weak indicator of hidden narcotics. Even Officer Beauchamp admitted that sometimes people are nervous when he stops them late at night on Interstate 35. We recognize that the law allows Officer Beauchamp to consider the totality of the circumstances with his personal experience when forming a reasonable suspicion. But even taking that into consideration, a reasonable suspicion that appellant was hiding narcotics in the car could not be rationally inferred from these facts. Without a reasonable suspicion that appellant possessed narcotics, when he gave appellant the warning citations, it was unreasonable to continue his detention for the canine

search. After reviewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court incorrectly denied appellant's motion to suppress.

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2. If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. Tex. R.App. P. 44.2(a). Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect the appellant's substantial rights. Tex.R.App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim. App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex.App.—Fort Worth 1998, pet. ref'd) (en banc).

 Here, the trial court erred by denying appellant's motion to suppress the marijuana found during the unreasonable continued detention. The evidence was subsequently admitted at trial. A search that offends the Fourth Amendment renders the subsequently discovered evidence inadmissible as a "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984). Because the error is constitutional, we apply rule 44.2(a). The question is whether the trial court's denial of appellant's motion to suppress was harmless beyond a reasonable doubt. *See Williams v. State*, 958 S.W.2d 186, 194 (Tex.Crim. App.1997). In applying the "harmless error" test, our primary question is what effect the error had, or reasonably may have had, on the jury's decision. *Mosley*, 983 S.W.2d at 259 (stating that constitutional errors should be analyzed in the same manner as under former rule 81(b)(2)).

 Our harmless error analysis must focus upon the error rather than the propriety of the outcome of the trial, trace its probable impact upon the jury, and determine whether it contributed to the conviction or punishment. *Harris v. State*, 790 S.W.2d 568, 585–87 (Tex.Crim.App. 1989). Our review concentrates on the fairness of the trial and the integrity of the process. *Id.* We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Id.* at 587. This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution. *Id.* at 586.

Here, appellant was charged with possession of marijuana. Without the evidence discovered during the unreasonable detention, there is nothing else in the record showing appellant possessed the marijuana. After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we are unable to determine beyond a reasonable doubt that the trial court's denial of appellant's motion to suppress the marijuana did not contribute to appellant's conviction or punishment. *Williams*, 958 S.W.2d at 194. We sustain appellant's first point on the motion to suppress.

### Sufficiency of the Evidence

In appellant's second point, he challenges the legal sufficiency of the evidence to support his conviction. He claims that even though the contraband was not suppressed the evidence was insufficient to link him to it. We address this point

because if appellant's complaint is successful he would be entitled to an acquittal. *Ortiz v. State* 577 S.W.2d 246, 250 (Tex. Crim.App. [Panel Op.] 1979).

 In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is not to reweigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the fact finder. *Williams v. State,* 937 S.W.2d 479, 483 (Tex.Crim.App.1996). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

 When an accused is charged with unlawful possession of a controlled substance, the State must prove that the defendant exercised actual care, custody, control, or management over the contraband and that he knew the matter possessed to be contraband. Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp.2001); *Mohmed,* 977 S.W.2d at 627. When the accused is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it. *Mohmed,* 977 S.W.2d at 627.

 The "affirmative link" analysis is used to review the evidence of the accused's knowledge and control of the contraband. *Id.* Among the factors to be considered in determining whether an affirmative link exists are: (1) the defendant's presence when the search warrant was executed; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was the driver of the automobile in which the contraband was found; (14) whether the appellant was found with a large amount of cash; and (15) whether the conduct of the accused indicated a consciousness of guilt. *Id.*

 The contraband in this case was found in the trunk of the car—an enclosed area. The car was rented, but neither appellant nor his passenger was listed on the automobile rental papers. Officer

Beauchamp testified that it is common for persons transporting illegal drugs to use rental cars rented to someone else to avoid seizure of the property. Appellant was driving the car when it was stopped. The contraband was wrapped in a jacket that was about appellant's size and contained papers bearing his name. The passenger had stated that the clothes in the trunk belonged to her and appellant. Finally, appellant's conduct indicated a consciousness of guilt. During the search of the trunk, he told the passenger that he may need her to call someone later.

After reviewing the evidence in the light most favorable to the verdict, we hold that the evidence in this case was sufficient to "link" appellant to the contraband and to permit the jury to reasonably infer and conclude that appellant was in possession of the marijuana. We overrule appellant's second point.

## CONCLUSION

Having sustained appellant's first point, we reverse the trial court's judgment and remand for a new trial.

WALKER, J., filed a dissenting opinion.

WALKER, Justice, dissenting.

I respectfully dissent. I agree with the majority that Officer Beauchamp's initial stop of appellant for traffic violations was justified. The question presented is whether Officer Beauchamp possessed a reasonable, articulable suspicion to justify appellant's continued detention for the purpose of a canine sniff of the vehicle.[1] I would hold that he did, and that appellant's continued three-minute detention was not violative of the Fourth Amendment.

The law is well-settled that an officer's investigative detention of a suspect based on reasonable, articulable facts that an offense has been or is being committed does not violate the Fourth Amendment as long as: (1) the officer's action was justified at its inception; and (2) the officer's action was reasonably related in scope to the circumstances which justified the interference in the first place. *See Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *Davis v. State,* 947 S.W.2d 240, 242 (Tex.Crim.App. 1997). This second prong deals with the scope of the detention. *Davis,* 947 S.W.2d at 243. Under the second prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Powell v. State,* 5 S.W.3d 369, 376 (Tex.App.—Texarkana 1999, pet. ref'd) (citing *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)), *cert. denied,* 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000). Once the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity. *Id.*

The law is equally well-settled that additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed. *See Razo v. State,* 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979); *Powell,* 5 S.W.3d at 378–79; *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.— Fort Worth 1998, pet. ref'd). Articulable facts coming to the officer's knowledge during the proper stop or detention may justify further investigation. *Razo,* 577 S.W.2d at 711; *Mohmed,* 977 S.W.2d at 628. An officer is not required to ignore

---

1. I also agree with the majority that our review of the suppression issue is limited to the record from the suppression hearing.

evidence or information that legitimately comes to his attention during a valid investigative stop merely because such evidence or information is not related to the initial purpose of the stop. *See, e.g., Razo,* 577 S.W.2d at 711; *Powell,* 5 S.W.3d at 378–79; *Mohmed,* 977 S.W.2d at 628.

Here, we confront the tension between these two well-settled legal doctrines. On one hand, to comport with the Fourth Amendment, an investigative detention must be temporary, must last no longer than is necessary to effectuate the purpose of the stop, and cannot be utilized as a "fishing expedition" concerning unrelated criminal activity. *See, e.g., Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1878; *Davis,* 947 S.W.2d at 243. On the other hand, when articulable facts leading an officer to reasonably believe another offense has been or is being committed come to the officer's knowledge during a proper stop or detention, the officer may continue the detention and investigate further. *See Razo,* 577 S.W.2d at 711; *Powell,* 5 S.W.3d at 378–79; *Mohmed,* 977 S.W.2d at 628.

During Officer Beauchamp's proper detention of appellant, he discovered that appellant and his passenger were traveling in a rental car rented from the Kansas City International Airport to a Bruce Williams. Neither appellant nor his passenger were listed on the rental agreement as additional drivers authorized to drive the rental car. Officer Beauchamp observed that appellant was very nervous. Appellant and his passenger gave "completely different" stories to Officer Beauchamp concerning their trip to Dallas. Appellant said they had just dropped someone off in Dallas, while appellant's passenger said they had driven to Dallas alone. Appellant and his passenger likewise provided Officer Beauchamp with differing information concerning when they went to Dallas and departed from Dallas.

The videotape of the stop, admitted into evidence and played for the trial court during the suppression hearing, reflects that after speaking with appellant and discovering these facts, Officer Beauchamp returned to his patrol car, called in appellant's Missouri driver's license, and requested back up from a nearby patrol unit. After another officer arrived, Officer Beauchamp gave appellant warning citations, returned the rental agreement to him, and asked appellant if he had anything of an illegal nature in the car. Appellant said, "No." When Officer Beauchamp asked for permission to "take a look" inside the car, appellant refused and said that the car was not his. At this point, appellant asked if he could leave, and Officer Beauchamp said no. Officer Beauchamp then removed his narcotics detection dog from his squad car, and the dog alerted on the passenger side door of the rental car.

The entire stop, up until appellant's arrest, took approximately twenty-two minutes. Appellant's continued detention from when Officer Beauchamp gave appellant the warning citations until appellant's arrest lasted approximately six minutes. Approximately three minutes elapsed between appellant's refusal to permit a search of the rental car and the canine's alert on the passenger door.[2]

At the time of appellant's stop, Officer Beauchamp was a narcotics interdiction officer with Denton County, Texas. He had received special training in narcotics

---

**2.** Once the canine alerted on the rental car passenger door, probable cause existed for Officer Beauchamp to search the rental car. *See United States v. Dortch,* 199 F.3d 193, 197 (5th Cir.1999). Thus, the "continued detention" at issue here is the approximately three-minute span between Officer Beauchamp's delivery of the traffic citation warnings to appellant and the canine's alert on the rental car's passenger door.

interdiction. The videotape of the stop and Officer Beauchamp's testimony at the suppression hearing establish that he properly obtained additional information in the course of investigating appellant's traffic violations. *See Mohmed,* 977 S.W.2d at 628 (holding that request for information concerning a driver's license, ownership of a vehicle, insurance information, appellant's destination, and the purpose of a trip are all proper inquiries after a traffic violation stop). This additional information caused him to have a reasonable suspicion that some additional crime had been or was being committed. Officer Beauchamp testified as follows:

[PROSECUTOR:] And at that point, why did you decide to utilize your canine?

A. Because I felt like at that time that I had developed reasonable suspicion, based on the conflicting stories, based on the driver nervousness, based on the information on the rental agreement, that there was some other crime taking place....

[PROSECUTOR:] And all the factors that you've listed, in your training and experience, are those common factors that you see in somebody that's transporting illegal narcotics?

A. Yes.

Officer Beauchamp's articulable suspicion that appellant was transporting illegal narcotics justified appellant's continued detention for three minutes for a canine open-air search around the rental car. *See Simpson v. State,* 29 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Martinez v. State,* 29 S.W.3d 609, 612 (Tex.App.—Houston [1st Dist.] 2000, pet. filed); *Zervos v. State,* 15 S.W.3d 146, 152–53 (Tex.App.—Texarkana 2000, pet. ref'd); *Powell,* 5 S.W.3d at 377–378; *Mohmed,* 977 S.W.2d at 628 (all holding that observations made and facts learned

by officer during traffic stop justified continued detention).

In summary, I agree with the majority's statement that "before issuing the [traffic citation] warnings, Officer Beauchamp needed sufficient facts to reasonably suspect appellant was hiding narcotics to permit further detention for the canine search." But unlike the majority, I would conclude that viewing all of the evidence offered at the suppression hearing in the light most favorable to the trial court's ruling Officer Beauchamp made observations and learned information during his proper traffic stop of appellant that gave rise to specific articulable facts, which, given Officer Beauchamp's experience and personal knowledge as a narcotics interdiction officer, together with the reasonable inferences from these facts, led Officer Beauchamp to reasonably suspect appellant was transporting illegal drugs. Moreover, I believe that this suspicion reasonably warranted the three-minute time intrusion imposed on appellant while Officer Beauchamp investigated further by conducting an open-air canine search of the exterior of the rental car. Therefore, I would hold that appellant's continued detention did not cross the sometimes fine Fourth Amendment line between law enforcement officers' possession of articulable facts justifying continuation of a traffic stop detention for further investigation and law enforcement officers' continuation of a traffic stop detention in a "fishing expedition" effort to obtain articulable facts or probable cause. *Compare Davis,* 947 S.W.2d at 245 (recognizing that officers' continued detention of appellant because he did not look like someone on a business trip was not based on articulable facts giving rise to reasonable suspicion of criminal activity); *see also Dortch,* 199 F.3d at 200–01 (holding that officers' third pat-down search of appellant almost thir-

ty-five minutes into traffic stop violated Fourth Amendment). I would overrule appellant's first point and affirm the trial court's judgment.