franklin v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-079-CR

SAMANTHA BREE FRANKLIN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Samantha Bree Franklin was convicted by a jury of possession of more than 400 grams of a controlled substance–methamphetamine–and sentenced to 13 years’ confinement in the Institutional Division of the Texas Department of Criminal Justice and a $5,000 fine.  In three issues, she complains that the evidence is factually insufficient to support her conviction and that the trial court erred in refusing to charge the jury on lesser included offenses.  Because we hold that the trial court did not err and that the evidence is factually sufficient to support Appellant’s conviction, we affirm the trial court’s judgment. 

In her first issue, Appellant contends that the evidence is factually insufficient to support her conviction for the offense of possession of more than 400 grams of methamphetamine with intent to deliver.  While this is the offense for which she was indicted, Appellant was convicted of possession of more than 400 grams of methamphetamine.  Appellant’s discussion makes clear that her complaint is about the evidence supporting her conviction, so we will address the issue in that light.

 Appellant specifically complains that the State failed to sufficiently link her to the drugs found in a storage unit rented to her because other people had access to the unit and she was not present when the drugs were weighed and packaged.  As this court has previously explained,

When an accused is charged with unlawful possession of a controlled substance, the State must prove that the defendant exercised actual care, custody, control, or management over the contraband and that he knew the matter possessed to be contraband.  When the accused is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it.

The "affirmative link" analysis is used to review the evidence of the accused's knowledge and control of the contraband.  Among the factors to be considered in determining whether an affirmative link exists are:  (1) the defendant's presence when the search warrant was executed; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found;  (12) whether the place where the drugs were found was enclosed;  (13) whether the accused was the driver of the automobile in which the contraband was found; (14) whether the appellant was found with a large amount of cash; and (15) whether the conduct of the accused indicated a consciousness of guilt.
(footnote: 2)

Similarly, the affirmative links analysis is also appropriate when the accused is not in exclusive possession of the contraband.
(footnote: 3)  Appellant’s friend, Jennifer Taylor, negotiated with a confidential informant to sell 112 grams of methamphetamine.  When she arrived at the prearranged meeting place and engaged in the transaction, she was arrested by an undercover police officer.  The substance seized, which the officer believed to be methamphetamine, had an unusual blue-green tint, which the narcotics officer testified he had never seen before or since the facts of this case occurred.  The substance was wrapped in a plastic bag, blue napkin, and foil.  Taylor was arrested at the scene of the transaction.  There is no evidence in the record showing the weight of the substance seized from Taylor or that it was in fact methamphetamine.  Taylor, however, did plead guilty to possession of “100 grams, plus or minus,” with intent to deliver.

Appellant’s boyfriend, Jarratt Keen, had been arrested about a week earlier.  After Keen was arrested and while he was still confined, Appellant arranged to pick up methamphetamine from Keen’s car and store it at a friend’s house.  Taylor was with her when she dropped the methamphetamine off.  A few days later, Appellant asked Taylor to pick the methamphetamine up from the friend’s house and bring it to a storage unit that she had rented.  Only Appellant and her father were listed on the lease agreement as persons with authorized access to the unit, but Keen also had access.  Similarly, Appellant gave Taylor the access code to the facility and the key to the lock on the storage unit.  After picking up the drugs, which were stored in a vaporizer box, Taylor placed them in the storage unit as Appellant had instructed.

A few days later, the confidential informant set up the buy with Taylor.  Taylor talked to Appellant, who talked to Keen, about how to proceed with the transaction.  Taylor, driving Appellant’s car, picked up Keen and Appellant at a motel and drove to the storage facility.  While Taylor and Keen weighed and bagged the drugs for the transaction, Appellant went to pick her son up from school.  When Appellant returned with her son, Taylor drove off in Appellant’s car to make the sale.  Appellant waited with Keen several hours at the storage facility for Taylor to return.  

After Taylor was arrested, she told the police officers about Appellant and Keen’s involvement and about the larger cache of drugs.  Pursuant to a search warrant, police officers searched the storage unit later that same night.  Within five minutes, they found several bags of blue-green tinted methamphetamine in the open vaporizer box on a shelf just inside the doorway.  There were 4 large plastic bags, one of which held almost 450 grams, and smaller “deal baggies” holding less than 10 grams each.  In all, the box held about 800 grams of methamphetamine.  The box also contained blue napkins, aluminum foil, and a digital gram scale.  Upon a more extensive search of the unit, the police located women’s clothing and some of Appellant’s personal papers, including her divorce decree.  We hold that the evidence provided sufficient affirmative links to show that Appellant exercised control over the drugs and that she knew they were contraband.  Further, applying the appropriate standard of review,
(footnote: 4) we hold that the evidence is factually sufficient to support Appellant’s conviction.  We overrule Appellant’s first issue. 

In her second and third issues, Appellant contends that the trial court erred in refusing to charge the jury on alleged lesser included offenses of possession, or possession with intent to deliver, of four or more but less than two hundred grams of methamphetamine.  Appellant specifically complains that the evidence showed that she could have been guilty, if at all, only of possessing, or of possessing with intent to deliver, the drugs sold in the undercover transaction.  Courts apply a two-step test to determine whether a charge on a lesser offense is required: (1) whether the lesser offense is within the proof necessary to establish the charged offense; and (2) whether some evidence in the record would permit a rational jury to find that if guilty of an offense, the defendant is guilty only of the lesser offense.
(footnote: 5)
 Appellant relies on the evidence that Keen had ultimate control over the drugs, that she participated in the negotiations, and that the drugs for the transaction were transported in her car to argue that there was evidence in the record that would permit a jury to find that she was guilty of simple possession, or possession with intent to deliver, of only the amount sold in the transaction.  Those drugs, however, had been cut from the larger amount that Appellant had stored with a friend and had then directed Taylor to transport to Appellant’s own storage unit, and Appellant waited at the storage unit (with the greater amount) while Taylor completed the transaction.  There was no evidence that any drugs were added to the amount Appellant originally picked up from Keen’s car or that any were cut from it except the amount sold to the undercover police officer.  There was also no evidence that Appellant did not know that most of the drugs were still in the storage unit when Taylor went to complete the transaction. 

Finally, except for the evidence of Taylor’s guilty plea, there was no evidence concerning the weight of the substance seized from Taylor after the drug transaction, nor was there any forensic evidence that it was in fact methamphetamine.  On the other hand, one of the officers who discovered the drugs in the storage unit testified that it was a large, substantial amount.  Both officers stated that a sample from the contraband was presumptively tested at the police department before being sent for analysis.  A forensic examiner testified that he tested and weighed the contraband found in each bag, and that he determined each bag contained methamphetamine.  His testimony also provided the exact weight of the controlled substance in each bag.  No one contested the weight of the drugs seized from the storage unit.  The evidence showed that if Appellant was guilty at all, she was guilty of possessing, or possessing with intent to deliver, the known quantity of methamphetamine found in the storage unit.  The trial court therefore did not err in denying the jury charge on lesser offenses.  We overrule Appellant’s second and third issues.  

Having overruled Appellant’s issues, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F: DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 18, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
McQuarters v. State
, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref’d) (citations omitted).

3:
Martin v. State
, 
753 S.W.2d 384, 386 (Tex. Crim. App. 1988).

4:
See Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); 
Clewis v. State
, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).
 

5:
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981); 
Arevalo v. State
, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997); 
Schweinle v. State
, 915 S.W.2d 17, 18 (Tex. Crim. App. 1996).