COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-284-CR

 

 

LUIS FERNANDO SALDIVAR                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Luis Fernando Saldivar pled
not guilty to possession of a controlled substance with intent to deliver but
was convicted by a jury and sentenced to six years= confinement.  He appeals the
denial of his motion to suppress, claiming error based on his right to be free
from unreasonable searches and seizures under the U.S. and Texas
Constitutions.  We affirm.








BACKGROUND

Around 1:30 a.m. on March 8,
2004, during a routine check of Amon Carter Park, Corporal Frederick Long of
the Fort Worth Police Department saw Appellant=s jeep and pulled up behind it. 
He called dispatch for backup before approaching the jeep=s lone occupant, Appellant, because when he turned his spotlight onto
the jeep, he saw Appellant lunge over to the right and he was not sure what
this movement signified.[2]  On his approach, Corporal Long saw two
unopened beer bottles, one on the passenger seat and one in the center console
cup holder.








When Corporal Long asked his
age, Appellant replied that he was nineteen. 
Corporal Long then asked Appellant to step out of the vehicle[3]
and took Appellant=s driver=s license back to his car; there were no outstanding warrants.  The back-up officer, Officer Fincher, arrived
as Corporal Long wrote out citations to Appellant for violating park curfew,
having alcohol in the park, and minor in possession of alcohol.  Both officers were in uniform.  Officer Fincher testified that he assumed a
position approximately ten feet away from Appellant.

Corporal Long testified that
he did not have Appellant sign the citations, that he explained to Appellant
that he had eleven days to make an appearance on the citations, and that
Appellant said Ano@ when asked if he had any questions.[4]  He then handed the driver=s license and the citations to Appellant and told him that he was free
to leave.  Appellant then turned towards
the jeep.








Corporal Long testified that
at that point, he remembered that there was still beer in the jeep and said, Aoh, by the way, do you have anything other than the obvious alcohol on
your center console in your vehicle that I need to know about, any contraband,
weapons, or anything?@  Corporal Long said that Appellant stopped in
response to his question.  Appellant then
turned, leaned back towards the jeep, ducked his head, and sighed.  In a quiet voice, he replied, Ayes.@[5]

Corporal Long testified that
at this point, Appellant was still free to leave, that the jeep was not boxed
in, and that A[i]f he
would have gotten in the car and driven off, he could have driven off, no
problem.  I couldn=t do anything about it.  I didn=t have any reason to detain.@  Appellant testified that he
did not feel free to leave at this point and that when the officers asked him
if there was anything else they should know, they Akind of like made it look like they were going to search anyways.  That=s how I felt.@  He said they did this by asking him whether
there was anything else they should know about. 
He testified that the officers did not have their weapons drawn and that
they did not threaten to get a search warrant.








AWhat?@ asked Corporal Long, in response to Appellant=s statement.[6]
Appellant said, AIt=s in the glove compartment.@  Corporal Long asked, AWhat is in the glove compartment?@[7]  Corporal Long testified that
Appellant then ducked his head again and sighed.  ACocaine,@ he said.

Corporal Long testified that
at this point, Appellant was detained because he had admitted a felony.  Corporal Long asked if he could get the
cocaine, and Appellant replied, AYeah, go ahead.@  Appellant testified that he gave permission
for Corporal Long to get the cocaine Abecause I had already told him what it was and where it was at.@

Corporal Long opened the
glove compartment and found a black plastic bag.  He asked Appellant if that was it, and
Appellant said, AYeah, that=s it.@ The bag
contained approximately eighty grams of cocaine.

Appellant=s motion to suppress was denied. 
The trial court provided a limiting instruction to the jury to the
effect that if they found that the officers detained Appellant for longer than
necessary to effectuate the stop=s purpose, then they were to disregard any evidence obtained from such
further detention and find Appellant not guilty; and if they found any evidence
was seized in violation of federal or state law, they were not to consider it
for any purpose. The jury convicted Appellant of possession of a controlled
substance with intent to deliver.








MOTION TO SUPPRESS

In his single point of error,
Appellant claims that the physical evidence from his jeep should have been
suppressed because it was obtained as a result of his continued detention,
without reasonable suspicion, beyond the time when Corporal Long effectuated
the purpose of his initial contact with Appellant, in violation of his Fourth
Amendment rights under the U.S. Constitution.[8]  The State counters that the initial
investigative detention ended and was followed by an inquiry that Appellant
could have ignored or refused to answer.

Standard Of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When, as here, there are no
explicit findings of historical fact, the evidence must be viewed in the light
most favorable to the trial court=s ruling.  Id.  We must uphold the trial court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974
(2004); Ross, 32 S.W.3d at 856; Romero, 800 S.W.2d at 543.

In determining whether a
trial court=s decision
is supported by the record, we generally consider only evidence adduced at the
suppression hearing because the ruling was based on it rather than evidence
introduced later.  See Rachal v. State,
917 S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519 U.S. 1043
(1996).  Here, the suppression issue was
addressed separately during the trial, after related testimony had already been
offered.  Before trial, Appellant requested
a running objection to all of that testimony subject to the court=s future order on his motion to suppress.[9]  Therefore, we consider the evidence adduced
before and during the suppression hearing as relevant to the trial court=s decision to deny the motion.

Fourth Amendment To The United States
Constitution








The Fourth Amendment protects
against unreasonable searches and seizures. 
U.S. Const. amend.
IV.  Whether a search or seizure is
reasonable is a question of law that we review de novo.  Kothe v. State, 152 S.W.3d 54, 62
(Tex. Crim. App. 2004).  Reasonableness
is measured by examining the totality of the circumstances.  Id. at 63.  It requires a balancing of the public
interest and the individual=s right to be free from arbitrary detentions and intrusions.  Id.








The Texas Court of Criminal
Appeals has recognized three categories of interactions between police officers
and citizens: encounters, investigative detentions, and arrests.  State v. Perez, 85 S.W.3d 817, 819
(Tex. Crim. App. 2002).  Unlike
investigative detentions and arrests, which are seizures for Fourth Amendment
purposes, an encounter is a consensual interaction, which the citizen is free
to terminate at any time.  See Gurrola
v. State, 877 S.W.2d 300, 302‑03 (Tex. Crim. App. 1994); State v.
Bryant, 161 S.W.3d 758, 761(Tex. App.CFort Worth, no pet.).  The
dispositive question is whether the totality of the circumstances shows that
the police conduct at issue would have caused a reasonable person[10]
to believe that he was free to decline the officer=s requests or otherwise terminate the encounter.  Florida v. Bostick, 501 U.S. 429, 439‑40,
111 S. Ct. 2382, 2389 (1991); Velasquez, 994 S.W.2d at 679; Johnson
v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).  If so, the interaction is a police‑citizen
Aencounter.@  United States v. Drayton, 536 U.S.
194, 201, 122 S. Ct. 2105, 2110 (2002); Bostick, 501 U.S. at 434-36, 111
S. Ct. at 2386; Florida v. Royer, 460 U.S. 491, 497‑98, 103 S. Ct.
1319, 1324 (1983); Velasquez, 994 S.W.2d at 679; Hunter v. State,
955 S.W.2d 102, 104 (Tex. Crim. App. 1997).

A detention, as opposed to an
arrest, may be justified on less than probable cause if a person is reasonably
suspected of criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 21-22, 88
S. Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts, would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.  Ford v.
State, 158 S.W.3d 488, 492‑93 (Tex. Crim. App. 2005). 








Appellant does not challenge
the reasonableness of Corporal Long=s initial investigative detention. 
Instead, he contends that Corporal Long and Officer Fincher were
required to issue his citations and to release him as soon as they finished,
and that his Fourth Amendment rights were violated because they unduly
prolonged the investigation, without reasonable suspicion, by asking whether he
had anything other than alcohol in his vehicle. 

A detention may last no
longer than is necessary to effectuate the purpose of the stop.  Royer, 460 U.S. at 500, 103 S. Ct. at
1325; Davis v. State, 947 S.W.2d 240, 243, 245 (Tex. Crim. App.
1997).  Once the purpose has been
satisfied, the stop may not be used for an unrelated Afishing expedition.@  Davis, 947 S.W.2d at
243 (quoting Ohio v. Robinette, 519 U.S. 33, 41, 117 S. Ct. 417, 422
(1996) (Ginsburg, J., concurring)).  Once
an officer concludes the investigation of the conduct that initiated the stop,
a continued detention is permitted only if there is reasonable suspicion
to believe another offense has been or is being committed.  See Davis, 947 S.W.2d at 245; McQuarters
v. State, 58 S.W.3d 250, 256 (Tex. App.CFort Worth 2001, pet. ref=d).








But it is not per se
unreasonable to ask questions or request consent to search after a detention is
completed, as long as a message is not conveyed by the officer=s words or acts that compliance is required.  See Bostick, 501 U.S. at 434, 111 S.
Ct. at 2386; see also Hunter, 955 S.W.2d at 104; James v. State,
102 S.W.3d 162, 173 (Tex. App.CFort Worth 2003, pet. ref=d).  The officer may not further
detain the occupant or the vehicle if consent is refused, unless reasonable
suspicion of some criminal activity exists. 
James, 102 S.W.3d at 173; see also Magana v. State, 177
S.W.3d 670, 673 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (holding that because an officer
may request consent after a stop, he logically may request consent during a
stop, as long as the stop is not prolonged beyond its normal duration if
consent is refused).

The Fourth Amendment does not
require that a lawfully seized defendant must be advised that he is Afree to go@ before his
consent to a search will be recognized as voluntary.  Robinette, 519 U.S. at 35, 117 S. Ct.
at 419.  But holding onto a person=s license or citations while asking questions, State v. Daly,
35 S.W.3d 237, 243 (Tex. App.CAustin 2000, no pet.), or detaining his vehicle, Davis, 947
S.W.2d at 241, 246, may indicate to a reasonable person that he is not free to
depart.








We conclude that the initial
investigative detention ended when Corporal Long handed Appellant his license
and citations and told him he was free to go because there are no facts to
indicate that this initial detention was prolonged.  Cf. Davis, 947 S.W.2d at 246; Daly,
35 S.W.3d at 243.  We examine, therefore,
whether the question asked by Corporal Long constituted a new investigative
detention, or merely an encounter.  Here,
the issue is not whether Appellant felt he had to answer the question
before he could leave, but whether Corporal Long, by word or deed, conveyed the
message in a manner such that a reasonable person would conclude
compliance was required.  See Bostick,
501 U.S. at 439, 111 S. Ct. at 2389; Hunter, 955 S.W.2d at 104, 106. 

In Hunter, the court
deemed several facts noteworthy in concluding that two officers investigating
drug smuggling at a bus station did not convey such a message when they asked
for Hunter=s
identification and for permission to search his bag.  966 S.W.2d at 103-04, 106.  The officers were dressed in plain clothes,
their weapons were concealed, and only one officer engaged the suspect while
the other stood several feet back.  Id.
at 104.  The engaging officer did not
retain the suspect=s bus ticket
and did not affirmatively state that he believed the suspect was carrying
drugs.  Id.  He specifically told the suspect that he did
not have to allow him to look in his bag and did not suggest that he would get
a search warrant if the suspect did not permit him to look in the bag.  Id. 
The suspect agreed to the search of his bag.  Id. at 103.

Appellant cites McQuarters,
Davis, and Daly in support of his argument that the initial
detention continued, unreasonably, when Corporal Long asked his question.  But Davis and McQuarters are
inapposite here because prolonged detentions occurred only after the
individuals refused to give consent to a search, under circumstances in which
the officers had no reasonable suspicion








to detain.[11]  Davis, 947 S.W.2d at 241; McQuarters,
58 S.W.3d at 254.  In McQuarters,
when asked if he had anything illegal in his vehicle, the driver said Ano.@  58 S.W.3d at 254.[12]  In Davis, the driver was not asked
whether he had anything illegal in his car but the officers called for a canine
unit when he denied permission to search.[13]  947 S.W.2d at 241.  Here, Appellant was not asked to consent to a
search until after he had admitted to the presence of cocaine in his jeep=s glove compartment.  Having
concluded that Appellant=s initial
detention ended with the return of his license, we must determine whether his
answer to Corporal Long=s question
was voluntary before examining his consent to the search.








In Daly, the court
indicated that a reasonable person would not feel free to leave when the
officer started asking questions as he returned the driver=s license.  35 S.W.3d at 241,
243.  Daly was stopped for failing to
signal before turning while out for an afternoon drive with his wife and one
year old daughter.  Id. at
239.  He was stopped by an officer dressed
completely in black, in combat‑style boots and a ASWAT-style@ uniform,
with his pistol strapped to his thigh.  Id.
at 239, 242.  His vehicle was marked ANarcotics Enforcement Team.@  Id. at 243.








Here, the officers were in
uniform, not plain clothes, cf. Hunter, 955 S.W.2d at 104, or ASWAT-style@ gear, cf.
Daly, 35 S.W.3d at 242.  Their
weapons were not concealed, but they were holstered at their sides.  Police uniforms and obvious sidearms, by
themselves, are not necessarily intimidating.[14]  See Drayton, 536 U.S. at 204‑05,
122 S. Ct. at 2112; cf. Daly, 35 S.W.3d at 242.  Like the other officer in Hunter,
Officer Fincher testified that he stood approximately ten feet away while
Corporal Long engaged Appellant.  See
955 S.W.2d at 104.  Corporal Long did not
retain Appellant=s license or
the citations nor threaten to detain Appellant=s jeep.  Cf. Davis, 947
S.W.2d at 241; Daly, 35 S.W.2d at 242. 
Nor did Corporal Long affirmatively state to Appellant that he thought
he was carrying drugs or other contraband before asking the question.  See Hunter, 966 S.W.2d at 104..

While Corporal Long did not
tell Appellant he did not have to answer the question, he also did not threaten
to get a search warrant if Appellant did not answer it.  He told Appellant that he was free to leave
and then asked him a question.[15]  Cf. Daly, 35 S.W.3d at 243 (stating
that officer=s admission
in court that he intended to question Daly in order to develop reasonable
suspicion of a narcotics violation was an indication that Daly was not free to
leave).








These facts are most similar
to Hunter, because although Appellant might have felt uncomfortable,
there are no facts that indicate the officers acted to detain him unreasonably
by asking the question or that he was not objectively

free to depart. 
See generally Hunter, 955 S.W.2d at 104-06.  After Appellant said that he had cocaine in
the glove compartment, he was once more detained.[16]








We next examine whether his
consent to search was voluntary.  A
search conducted with the consent of the suspect is an exception to the warrant
requirement, so long as the consent is voluntary.  Schneckloth v. Bustamonte, 412 U.S.
218, 219, 248-49, 93 S. Ct. 2041, 2043-44, 2059 (1973).  To show that the search was made with
consent, the State must prove by clear and convincing evidence, based on the
totality of the circumstances, that the defendant gave consent freely and
voluntarily.  Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000); State v. Hunter, 102 S.W.3d 306,
310 (Tex. App.CFort Worth
2003, no pet.).  Voluntariness is to be
determined from all the circumstances surrounding the consent.  Schneckloth, 412 U.S. at 248‑49,
93 S. Ct. at 2059.  To be voluntary,
consent must Anot be
coerced, by explicit or implicit means, by implied threat or covert force.@  Carmouche, 10 S.W.3d at
331 (quoting Schneckloth, 412 U.S. at 228, 93 S.Ct. at 2048).  A police officer=s failure to inform the accused that he can refuse consent is a factor
to consider in determining the voluntariness of consent; however, the absence
of such information does not automatically render the accused=s consent involuntary.  Johnson,
68 S.W.3d at 653; Hunter, 102 S.W.3d at 311.

Appellant assented when
Corporal Long asked if he could retrieve the cocaine from the glove
compartment.  He admitted in his
testimony that he gave consent to the search because he had already informed
Corporal Long that there was cocaine in the car and that it was in the glove
compartment.  There was no testimony in
the record about any actions by Corporal Long or Officer Fincher that would
indicate that Appellant was coerced by the officers to grant permission to
retrieve the cocaine after Appellant told them it was in the jeep or that his
consent was in any other way involuntary. 
Based on these facts, we hold that Appellant voluntarily consented to
the search of his jeep, and therefore, the subsequently discovered evidence was
not inadmissible as Afruit of the
poisonous tree.@  See Segura v. United States, 468 U.S.
796, 804-05, 104 S. Ct. 3380, 3385 (1984).

 








 

 

 

CONCLUSION

Because we hold that
Appellant was no longer detained when Corporal Long asked him if he had any
contraband in his jeep, Appellant=s response to the question was voluntary, as was his consent to
retrieve the cocaine.  Therefore, we
overrule Appellant=s single
point of error and affirm.

 

 

DIXON W. HOLMAN

JUSTICE

PANEL B: 
DAUPHINOT, HOLMAN, and GARDNER, JJ.

PUBLISH

DELIVERED: 
November 16, 2006

 











[1]See Tex.
R. App. P. 47.4.





[2]Corporal Long testified, AWhen you see somebody move like
that, you don=t know if they are going after a
weapon or if they=re trying to hide something or if
they=re just making a simple movement
trying to get a wallet, trying to get an insurance card, or what have you.@





[3]Corporal Long testified that he
asked Appellant to step out of the vehicle because A[t]hat way if there is a weapon, he
can=t go after it, he=s out there talking to me.  It=s safer if it=s one on one.@





[4]Corporal Long said that the only
citations that require signature are juvenile citations and that he prefers not
to hand his pen to people receiving citations mainly because the pen could be
used as a weapon against him.

Appellant testified at
the suppression hearing that Corporal Long had him sign the citations and that
Corporal Long and Officer Fincher both got within a few feet of Appellant and
were right by each other.  Photocopies of
the citations were admitted into evidence without objection.  Appellant=s signature was absent from all three.  He also testified that Corporal Long still
had the citations and the driver=s license when the officers Asaw the beer again and they said, >do you have anything else in the
car.=@ 
He testified that Officer Fincher asked the question, not Corporal Long.





[5]Officer Fincher testified that he
stopped, Aalmost in shock,@ when Appellant said this.  Corporal Long said that Officer Fincher was
walking toward his car and when Appellant said Ayes,@ Officer Fincher did a double-take
and Alooked like, >what?= . . . He was just as shocked as I
was that [Appellant] said yes.@





[6]Corporal Long said that he did not
know to which option Appellant answered Ayes@ and Awas frankly surprised he said yes
anyways, period, and that=s why I asked the question, >what?=@ 
He testified that this was a clarifying question about what was in the
jeep.





[7]Officer Fincher testified that he
and Corporal Long started to get on edge because they did not know at that
point what was in the glove compartment. 





[8]Appellant also claims that the
continued detention violated article I, section 9 of the Texas
Constitution.  We will only address whether Appellant=s rights were violated under the
U.S. Constitution because Appellant does not distinguish those rights from his
rights under the Texas Constitution.  See
Dewberry v. State, 4 S.W.3d 735, 744 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1131 (2000) (addressing only U.S. Constitution because
appellant failed to distinguish rights with Texas Constitution); Hale v.
State, 139 S.W.3d 418, 421 (Tex. App.CFort Worth 2004, no pet.) (determining appellant failed to
distinguish between U.S. Constitution and Texas Constitution).

 





[9]The State indicated that it would
probably not go forward with the trial if the court granted Appellant=s motion to suppress.





[10]A[M]ost confrontations with the
police are uncomfortableCgiven the implicit difficulty in
refusing any request from a peace officer who stands cloaked in the authority
of law enforcement.@ 
Carmouche, 10 S.W.3d at 333. ABut the Constitution does not
guarantee freedom from discomfort.  And
the test is not whether a timid person would feel free to terminate the
interview. Instead, the [courts use] a >reasonable person= standard.@  State v.
Velasquez, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).  The Constitution Apresumes that an actor is invested
with a vibrant sense of his own constitutional rights and will assert those
rights when they are implicated.@  Carmouche,
10 S.W.3d at 333.

 





[11]Both cases involved drivers pulled
over at night for suspected DWI. Davis, 947 S.W.2d at 241; McQuarters,
58 S.W.3d at 253-54.





[12]We held that the McQuarters
detention was unreasonable because the officer concluded the purpose of the
initial stop when he dismissed his suspicion that the driver was intoxicated
and issued traffic violation warnings; to permit further detention for a canine
search, the officer needed, but lacked, reasonable suspicion that the driver
was hiding narcotics.  58 S.W.3d at
257-58.





[13]Davis refused consent to a search
and the officers told him that he was free to leave, but that his vehicle would
be detained.  947 S.W.2d at 241.  The court concluded that the stop=s purpose was effectuated when the
officers determined that Davis was not drunk; continued detention was
unreasonable when it had no justification, it was 1:00 a.m., Davis= only visible means of
transportation was the detained vehicle, and there was nothing to indicate that
the vehicle was in any way related to criminal conduct.  Id. at 245‑46.





[14]AOfficers are often required to wear
uniforms and in many circumstances this is cause for assurance, not
discomfort.  Much the same can be said
for wearing sidearms.  That most law
enforcement officers are armed is a fact well known to the public.  The presence of a holstered firearm thus is
unlikely to contribute to the coerciveness of the encounter absent active
brandishing of the weapon.@  Drayton, 536
U.S. at 204‑05, 122 S. Ct. at 2112.





[15]These facts parallel Robinette.  519 U.S. at 35-36, 117 S. Ct. at 419-20.  Robinette was stopped for speeding, and a
computer check of his license was made.  Id.
at 35, 419.  After returning the license,
the officer issued a verbal warning, then said, AOne question before you get
gone:  [A]re you carrying any illegal
contraband in your car?  Any weapons of
any kind, drugs, anything like that?@  Id. at 35‑36,
419.  Unlike Appellant, Robinette said Ano,@ but like Appellant, he consented
when the deputy asked if he could search the car, in which the deputy found
illegal narcotics.  Id. at 36,
419.  The court held his consent to
search was voluntary.  Id. at
39-40, 421.  See also Spight v. State,
76 S.W.3d 761, 767‑68 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (holding that it was not
unreasonable per se for officer to request consent to search after traffic stop
was completed). 





[16]The Texas Code of Criminal Procedure
states that an officer may arrest an offender without a warrant Awhen the offense is committed in
his presence or within his view, if the offense is one classed as a felony,@ or Afor any offense committed in his
presence or within his view.@  Tex. Code Crim. Proc. Ann. art.
14.01(a), (b) (Vernon 2005).