COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-079-CR
 
  
SAMANTHA 
BREE FRANKLIN                                                  APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Samantha Bree Franklin was convicted by a jury of possession of more than 400 
grams of a controlled substance–methamphetamine–and sentenced to 13 years’ 
confinement in the Institutional Division of the Texas Department of Criminal 
Justice and a $5,000 fine. In three issues, she complains that the evidence is 
factually insufficient to support her conviction and that the trial court erred 
in refusing to charge the jury on lesser included offenses. Because we hold that 
the trial court did not err and that the evidence is factually sufficient to 
support Appellant’s conviction, we affirm the trial court’s judgment.
        In 
her first issue, Appellant contends that the evidence is factually insufficient 
to support her conviction for the offense of possession of more than 400 grams 
of methamphetamine with intent to deliver. While this is the offense for which 
she was indicted, Appellant was convicted of possession of more than 400 grams 
of methamphetamine. Appellant’s discussion makes clear that her complaint is 
about the evidence supporting her conviction, so we will address the issue in 
that light.
        Appellant 
specifically complains that the State failed to sufficiently link her to the 
drugs found in a storage unit rented to her because other people had access to 
the unit and she was not present when the drugs were weighed and packaged. As 
this court has previously explained,
 
When 
an accused is charged with unlawful possession of a controlled substance, the 
State must prove that the defendant exercised actual care, custody, control, or 
management over the contraband and that he knew the matter possessed to be 
contraband. When the accused is not in exclusive possession of the place where 
the substance is found, there must be additional independent facts and 
circumstances that affirmatively link the accused to the contraband in such a 
manner that it can be concluded he had knowledge of the contraband as well as 
control over it.
 
The 
"affirmative link" analysis is used to review the evidence of the 
accused's knowledge and control of the contraband. Among the factors to be 
considered in determining whether an affirmative link exists are: (1) the 
defendant's presence when the search warrant was executed; (2) whether the 
contraband was in plain view; (3) the defendant's proximity to and the 
accessibility of the narcotic; (4) whether the defendant was under the influence 
of narcotics when arrested; (5) whether the defendant possessed other contraband 
or narcotics when arrested; (6) whether the defendant made incriminating 
statements when arrested; (7) whether the defendant attempted to flee; (8) 
whether the defendant made furtive gestures; (9) whether there was an odor of 
the contraband; (10) whether other contraband or drug paraphernalia were 
present; (11) whether the defendant owned or had the right to possess the place 
where the drugs were found; (12) whether the place where the drugs were found 
was enclosed; (13) whether the accused was the driver of the automobile in which 
the contraband was found; (14) whether the appellant was found with a large 
amount of cash; and (15) whether the conduct of the accused indicated a 
consciousness of guilt.[2]

 
        Similarly, 
the affirmative links analysis is also appropriate when the accused is not in 
exclusive possession of the contraband.[3]  
Appellant’s friend, Jennifer Taylor, negotiated with a confidential informant 
to sell 112 grams of methamphetamine. When she arrived at the prearranged 
meeting place and engaged in the transaction, she was arrested by an undercover 
police officer. The substance seized, which the officer believed to be 
methamphetamine, had an unusual blue-green tint, which the narcotics officer 
testified he had never seen before or since the facts of this case occurred. The 
substance was wrapped in a plastic bag, blue napkin, and foil. Taylor was 
arrested at the scene of the transaction. There is no evidence in the record 
showing the weight of the substance seized from Taylor or that it was in fact 
methamphetamine. Taylor, however, did plead guilty to possession of “100 
grams, plus or minus,” with intent to deliver.
        Appellant’s 
boyfriend, Jarratt Keen, had been arrested about a week earlier. After Keen was 
arrested and while he was still confined, Appellant arranged to pick up 
methamphetamine from Keen’s car and store it at a friend’s house. Taylor was 
with her when she dropped the methamphetamine off. A few days later, Appellant 
asked Taylor to pick the methamphetamine up from the friend’s house and bring 
it to a storage unit that she had rented. Only Appellant and her father were 
listed on the lease agreement as persons with authorized access to the unit, but 
Keen also had access. Similarly, Appellant gave Taylor the access code to the 
facility and the key to the lock on the storage unit. After picking up the 
drugs, which were stored in a vaporizer box, Taylor placed them in the storage 
unit as Appellant had instructed.
        A 
few days later, the confidential informant set up the buy with Taylor.  
Taylor talked to Appellant, who talked to Keen, about how to proceed with the 
transaction. Taylor, driving Appellant’s car, picked up Keen and Appellant at 
a motel and drove to the storage facility. While Taylor and Keen weighed and 
bagged the drugs for the transaction, Appellant went to pick her son up from 
school. When Appellant returned with her son, Taylor drove off in Appellant’s 
car to make the sale. Appellant waited with Keen several hours at the storage 
facility for Taylor to return.
        After 
Taylor was arrested, she told the police officers about Appellant and Keen’s 
involvement and about the larger cache of drugs. Pursuant to a search warrant, 
police officers searched the storage unit later that same night. Within five 
minutes, they found several bags of blue-green tinted methamphetamine in the 
open vaporizer box on a shelf just inside the doorway. There were 4 large 
plastic bags, one of which held almost 450 grams, and smaller “deal baggies” 
holding less than 10 grams each. In all, the box held about 800 grams of 
methamphetamine. The box also contained blue napkins, aluminum foil, and a 
digital gram scale. Upon a more extensive search of the unit, the police located 
women’s clothing and some of Appellant’s personal papers, including her 
divorce decree. We hold that the evidence provided sufficient affirmative links 
to show that Appellant exercised control over the drugs and that she knew they 
were contraband. Further, applying the appropriate standard of review,[4]  we hold that the evidence is factually sufficient to 
support Appellant’s conviction. We overrule Appellant’s first issue.
        In 
her second and third issues, Appellant contends that the trial court erred in 
refusing to charge the jury on alleged lesser included offenses of possession, 
or possession with intent to deliver, of four or more but less than two hundred 
grams of methamphetamine. Appellant specifically complains that the evidence 
showed that she could have been guilty, if at all, only of possessing, or of 
possessing with intent to deliver, the drugs sold in the undercover transaction. 
Courts apply a two-step test to determine whether a charge on a lesser offense 
is required: (1) whether the lesser offense is within the proof necessary to 
establish the charged offense; and (2) whether some evidence in the record would 
permit a rational jury to find that if guilty of an offense, the defendant is 
guilty only of the lesser offense.[5]
        Appellant 
relies on the evidence that Keen had ultimate control over the drugs, that she 
participated in the negotiations, and that the drugs for the transaction were 
transported in her car to argue that there was evidence in the record that would 
permit a jury to find that she was guilty of simple possession, or possession 
with intent to deliver, of only the amount sold in the transaction. Those drugs, 
however, had been cut from the larger amount that Appellant had stored with a 
friend and had then directed Taylor to transport to Appellant’s own storage 
unit, and Appellant waited at the storage unit (with the greater amount) while 
Taylor completed the transaction. There was no evidence that any drugs were 
added to the amount Appellant originally picked up from Keen’s car or that any 
were cut from it except the amount sold to the undercover police officer. There 
was also no evidence that Appellant did not know that most of the drugs were 
still in the storage unit when Taylor went to complete the transaction.
        Finally, 
except for the evidence of Taylor’s guilty plea, there was no evidence 
concerning the weight of the substance seized from Taylor after the drug 
transaction, nor was there any forensic evidence that it was in fact 
methamphetamine. On the other hand, one of the officers who discovered the drugs 
in the storage unit testified that it was a large, substantial amount. Both 
officers stated that a sample from the contraband was presumptively tested at 
the police department before being sent for analysis. A forensic examiner 
testified that he tested and weighed the contraband found in each bag, and that 
he determined each bag contained methamphetamine. His testimony also provided 
the exact weight of the controlled substance in each bag. No one contested the 
weight of the drugs seized from the storage unit. The evidence showed that if 
Appellant was guilty at all, she was guilty of possessing, or possessing with 
intent to deliver, the known quantity of methamphetamine found in the storage 
unit. The trial court therefore did not err in denying the jury charge on lesser 
offenses. We overrule Appellant’s second and third issues.
        Having 
overruled Appellant’s issues, we affirm the trial court’s judgment.
  
   
                                                                  PER 
CURIAM
 
PANEL 
F:   DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON, J.
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
March 18, 2004

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
McQuarters v. State, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, 
pet. ref’d) (citations omitted).
3.  
Martin v. State, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988).
4.  
See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); Johnson 
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 
129, 134 (Tex. Crim. App. 1996).
5.  
Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981); Arevalo 
v. State, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997); Schweinle v. State, 
915 S.W.2d 17, 18 (Tex. Crim. App. 1996).