Dustin Lynn Bates v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-224-CR

DUSTIN LYNN BATES APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367
TH
 DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

A jury found Appellant Dustin Lynn Bates guilty of possession of a controlled substance, methamphetamine, in the amount of less than one gram, and assessed punishment at twenty-four months’ confinement in a state jail facility.  The trial court sentenced him accordingly, and Appellant timely filed a notice of appeal.

Anders
 Standard

Appellant’s court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders v. California
(footnote: 1) by presenting a professional evaluation of the record demonstrating why, in his opinion, there are no arguable grounds for relief.  This court afforded Appellant the opportunity to file a brief on his own behalf, but he did not.

Once an appellant’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, we are obligated to undertake an independent examination of the record and to essentially rebrief the case for the appellant to see if there is any arguable ground that may be raised on his behalf.
(footnote: 2)  Our independent review of the record reveals that appellate counsel has correctly determined that there are no arguable grounds for direct appellate relief based on the record before us.

Pretrial

There are no jurisdictional errors; the trial court had subject matter jurisdiction over this case.
(footnote: 3)  Further, the indictment was not defective; it sufficiently conferred jurisdiction on the trial court and gave Appellant sufficient notice.
(footnote: 4)  Appellant filed several pretrial motions, but there is no evidence in the record that defense counsel presented the motions to the trial court or got a ruling.  To preserve a complaint, the record must show that the motions were presented to the trial court and that the trial court ruled or refused to rule.
(footnote: 5)  Consequently, any issues raised in the motions were not preserved for appeal.

Voir Dire

During voir dire, some venire members indicated that they would assume intentional or knowing possession of contraband in a vehicle if the contraband was “within arm’s reach, . . . [l]ike if it’s in your glove box or your console or your door panel.”  One venire member named in this group, Mr. Mason, sat on Appellant’s jury.  The record does not show whether any of the unnamed venire members indicating that they would assume guilt from the mere presence of drugs within arm’s reach in one’s vehicle also served on the jury.  Defense counsel did not challenge any venire members for cause on this ground and consequently did not preserve error.
(footnote: 6)
Guilt-Innocence

The evidence shows that Appellant was driving alone in a vehicle that he had owned about a week.  Officer Bryson stopped him for traffic violations.  At first, Appellant gave a false identity to Bryson, showing a birth certificate and a social security card, but Appellant later gave Bryson his real name and birth date.  When Bryson discovered that there were warrants out for Appellant’s arrest, he arrested Appellant on the outstanding warrants and performed an inventory search of the vehicle, which was still registered to the prior owner.  Bryson found a baggie of methamphetamine in the amount of less than one gram in a closed metal cylinder in the center floorboard.

In addition to the cylinder and baggie of methamphetamine, however, the trial court also admitted without objection by defense counsel the following items taken from Appellant’s vehicle:

from the cylinder, a purple straw and empty baggie;

the birth certificate and social security card of Christopher Maples;

a black nylon bag;

a manilla envelope;

a glass tube pipe;

a Crown Royal bag;

a purple tray;

pieces of a broken pipe; and a

digital scale.

Appellant’s theory at trial was that the drugs did not belong to him.  As this court has previously explained,

When an accused is charged with unlawful possession of a controlled substance, the State must prove that the defendant exercised actual care, custody, control, or management over the contraband and that he knew the matter possessed to be contraband.  When the accused is not in exclusive possession of the place where the substance is found, there must be additional independent facts and circumstances that affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it.

The “affirmative link” analysis is used to review the evidence of the accused's knowledge and control of the contraband.  Among the factors to be considered in determining whether an affirmative link exists are:  (1) the defendant's presence when the search warrant was executed; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found;  (12) whether the place where the drugs were found was enclosed;  (13) whether the accused was the driver of the automobile in which the contraband was found; (14) whether the appellant was found with a large amount of cash; and (15) whether the conduct of the accused indicated a consciousness of guilt.
(footnote: 7)
 Appellant’s pickup, which had a bench seat, was searched pursuant to the inventory exception.  The drugs were inside a closed cylinder attached to a leather pouch in the center floorboard of the cab.  There is no indication that Appellant was under the influence of drugs at the time of his arrest, nor did he make any incriminating statements regarding this offense.  The police found other drug paraphernalia in the pickup, but no other drugs or cash.  The police believed that Appellant’s conduct was suspicious—he got out of his pickup when the police pulled him over, he said he did not have his driver’s license with him (it was later discovered in his pocket), he stutteringly provided a false identity, and he was nervous and fidgety in the driver’s seat while the officer waited for back-up, repeatedly asking to get out of the truck to go smoke a cigarette.  Applying the appropriate standards of review, the evidence is legally
(footnote: 8) and factually
(footnote: 9) sufficient to support the jury’s verdict.

Because Appellant put ownership of the methamphetamine at issue, admission of the drug paraphernalia indicating drug use was proper.
(footnote: 10)  Even though the birth certificate and social security card were not relevant to the offense of possession, it would be difficult for Appellant to successfully argue that their admission was harmful because that evidence supported his theory that the drugs belonged to someone else.

However, the admission without objection of the scale and testimonial evidence that (1) the “My Weigh MX 200 digital scale” is mostly used for weighing drugs, (2) “they . . . place [the drug] on the scale to get an accurate measurement so they can pour it into their bag for transport or for sale,” and (3) four small, empty Ziploc baggies were found (4) which Bryson was only familiar with “for narcotics transport and carrying” was at least arguably improper and harmful.  That is, Appellant could make a very solid case for the evidence being extraneous offense evidence that should be excluded under rules 403 and 404,
(footnote: 11) not admissible same transaction contextual evidence.
(footnote: 12)  He could also connect the improper admission to the maximum sentence that he received.

Officer Bryson also testified without objection by defense counsel that the pickup cab contained a lot of car parts, including a steering wheel, tools, hand tools, sockets, wrenches, screwdrivers, car stereos, a speaker, and an amplifier.  The arguments for this evidence being extraneous offense evidence and not same transaction contextual evidence are even stronger than the arguments for excluding the extraneous drug offense evidence.  We note that Appellant’s trial counsel referred to the car parts and tools in his opening statement; the prosecutor did not.  The following exchange occurred on redirect by the prosecutor:

Q. Officer Bryson, I have just a couple of follow-up questions for you.  [Defense Counsel] was asking you in regards to the truck, during a series of questions about the keys, whether or not the steering wheel was punched in the vehicle.  What does it mean for a steering wheel to be punched?

A. That the ignition has been broken so the vehicle can be driven without a set of keys.

Q. And what is that indicative of?

A. That's indicative of a car being stolen or having been stolen.

Q. Let's talk about what was inside the cab of the truck.  There has been reference to what you described as car parts.  Are you talking about carburetors, engine parts, things of that nature?

A. No.

Q. What kind of parts are you referring to?

A. There was a steering wheel inside the vehicle.

Q. What else besides a steering wheel in the cab of the truck did you find?

A. There were sockets; hand tools, meaning wrenches, pliers, screwdrivers, stuff like that; car stereos.

Q. Besides car stereos, a steering wheel, and tools, anything else inside the cab of the truck?

A. The bags.  And I believe there was an amplifier inside there as well, a speaker.

On re-cross-examination by defense counsel, the following exchange occurred:

Q. You're not inferring that my client was stealing stereos, are you?

A. No.

Q. And if you thought that, you would have actually looked to see if that stereo has been stolen.  Is that right?

A. I did.  I ran all stereos inside to see if they were stolen.

Q. And they weren't, were they?

A. They weren't, but they might not have been reported.  A lot of people don't know the serial numbers for their stereos.

Q. But you're not saying my client had been stealing, are you?

A. No.

Q. And with respect to these car parts and tools, you're not saying my client was stealing those either, are you?

A. No.

On further redirect by the prosecutor, the discussion of the extraneous evidence continued,

Q. When you found those items inside the truck, why did—or how many car stereos are you talking about did you find inside of there?

A. There were three or four of them.

Q. Why did you run the serial numbers?

A. Because most cars come with one that comes inside the dash, and the other three or four were all loose and had the wires cut on the backside of them.

Q. And you said when you ran the serial numbers those stereos had not been reported stolen.  Does that mean that those stereos had not been stolen?

[Defense Counsel]: Objection, speculation.

THE COURT: He's got to make—

[Prosecutor]: Objection, Your Honor, to counsel—

[Defense Counsel]: Objection, speculation, Your Honor, and relevance.  He's already said that my client—he’s not thinking that my client's stealing anything.

[Prosecutor]: I believe [Defense Counsel]'s opened the door, Your Honor.

THE COURT:  I'm going to overrule the objection.

Q. Because when you ran the serial numbers on the stereos with the cut wires not being reported stolen, does that necessarily in fact mean they had not been stolen?

A. It's possible they could have been.

Upon further re-cross-examination by defense counsel, the following exchange took place:

Q. And you're not alleging that my client was stealing stereos, are you?

A. No.

Q. And no case has been filed on that, have there?

A. No.

Without examining whether defense counsel exacerbated the error of admitting the testimony about the stereos, car parts, and tools, we note that defense counsel lodged no objections under rule 403 or rule 404(b) to the admission of any of the extraneous evidence.
(footnote: 13)  Any error in its admission was therefore not preserved.
(footnote: 14)
 We note that the State did not refer to the tools, car parts, and stereos in its opening statement and closing argument.  But it would seem that the State’s references to the extraneous offense evidence of possession with intent to deliver in its opening statement and closing argument, unobjected to by defense counsel, exacerbated the harm from the admission of the scale and the testimony about the scale and baggies.  We observe no other noteworthy issues or potential issues in either the opening statement or the closing argument at the guilt-innocence phase.

Additionally, we note that the jury charge provided a limiting instruction regarding 
testimony
 of extraneous offenses, requiring that the jury consider the testimony only if the jury believed Appellant committed the extraneous offenses beyond a reasonable doubt, and then only on the issue of intent.
(footnote: 15)  We see no limiting instruction, however, on the admission of physical evidence, that is, the digital scale.
(footnote: 16)  The jury charge conference does not appear in the record, nor do any written requests or objections to the charge, so we do not know whether or not defense counsel requested a limiting instruction on the scale. Other than the omission of the limiting instruction about the scale, we see no error in the charge at guilt-innocence.
(footnote: 17)
Punishment

In its opening statement on punishment, the State misstated the law on probation.  Specifically, the prosecutor stated that “Dustin Lynn Bates [was] no longer eligible for probation because of his criminal history.”  While it is true that the jury could not assess a probated sentence in this case,
(footnote: 18) the trial court had discretion to probate Appellant’s sentence.
(footnote: 19)  Defense counsel did not object.  It would be difficult to show how Appellant was harmed by this misstatement of the law or defense counsel’s failure to object to it because the jury has no effect on how the trial court exercises its discretion.

Defense counsel stipulated to the admissibility of the prior conviction packets offered by the State, as well as to the fact that Appellant was the defendant in each of those prior cases, the prior conviction packets were admitted, and the State rested its case.  Defense counsel then called witnesses on Appellant’s behalf, seeking a minimum sentence.  We note no errors in the charge at punishment.  No posttrial motions appear in the record.

Ineffective Assistance

To the extent that Appellant has an ineffective assistance of counsel claim based on any of the acts or omissions of defense counsel at trial, the record before us is not sufficient to sustain the claim.
(footnote: 20)  A record sufficient to show ineffective assistance of counsel can rarely be developed on direct appeal, especially when no motion for new trial is filed and heard.  The Texas Court of Criminal Appeals has pointed out that an application for a writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims in this situation.
(footnote: 21)

Conclusion

After our independent review of this record, we are constrained to agree with appellate counsel’s determination that any direct appeal of this case would be frivolous.  Therefore, we grant counsel’s motion to withdraw from this case  and affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, LIVINGSTON, and HOLMAN, JJ.

LIVINGSTON, J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 28, 2005

FOOTNOTES
1:
386 U.S. 738, 87 S. Ct. 1396 (1967).

2:
Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).

3:
See
 Tex. Code Crim. Proc. Ann.
 art. 4.05 (Vernon 2005); 
Tex. Penal Code Ann.
 § 12.04(a) (Vernon 2003).

4:
See
 
Tex. Const.
 art. V, § 12(b)
; 
Tex. Health & Safety Code Ann. 
§ 481.112(b) (Vernon
 2003)
; 
Studer v. State
, 799 S.W.2d 263, 272-73 (Tex. Crim. App. 1990).

5:
Tex. R. App. P.
 33.1(a); 
Thompson v. State
, 691 S.W.2d 627, 635 (Tex. Crim. App. 1984); 
see Mendez v. State
, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

6:
See Johnson v. State
, 43 S.W.3d 1, 6-7 (Tex. Crim. App. 2001).

7:
McQuarters v. State
, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref’d) (citations omitted).

8:
See
 
Jackson v. Virginia
,
 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

9:
See Zuniga v. State
, 144 S.W.3d 477, 481-82, 484-87 (Tex. Crim. App. 2004); 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

10:
See
 
McQuarters
, 58 S.W.3d at 259.

11:
Tex. R. Evid.
 403, 404(b).

12:
See Wyatt v. State
, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); 
Rogers v. State
, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); 
Best v. State
, 118 S.W.3d 857, 864 (Tex. App.—Fort Worth 2003, no pet.).

13:
See 
Tex. R. Evid.
 403, 404(b).

14:
See
 
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
,
 
526 U.S. 1070 (1999).

15:
See
 
Tex. R. Evid.
 105(a).

16:
See id.

17:
See
 
Tex. Code Crim. Proc. Ann.
 art. 36.16 (Vernon 1981).

18:
See
 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 4(d)(2), (3), (e) (Vernon Supp. 2004-05).

19:
See
 
id.
 § 15(a)(1).

20:
See Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999);
 Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999)
 (all providing standard of review for ineffective assistance claims).

21:
Rylander v. State
, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).