Grady Harper v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-327-CR

GRADY HARPER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Grady Lee Harper was charged with three counts of possession of a controlled substance.  A jury found Harper guilty of counts two and three, and the trial court sentenced him to eleven years’ confinement and two years’ confinement, respectively.  In nine points, Harper complains that the evidence is legally and factually insufficient to support the convictions, that the trial court erred by not suppressing a statement made to a police officer, that the prosecutor made improper comments during closing argument, and that his counsel was ineffective.  We will affirm.

II.  Factual Background

On the evening of January 30, 2003, police were conducting surveillance of Harper’s residence.  At around 10:00 p.m., Harper left in his vehicle, and police officers followed him.  Officers stopped Harper after they observed him change lanes and turn without signaling.  Harper consented to a search of his vehicle.  Officer Taylor found a crumbled up foil packet on the dashboard near the speedometer.  Eight tablets marked as Methadone were inside the foil packet.  Officer Taylor placed the packet on the roof of the car, and Harper, who had been watching, said to him, “I takes those.”  Officer Taylor asked Harper if he had a prescription for them; Harper replied that he did not. 

A patrol unit was requested, and Harper asked if he could sit down because his legs hurt.  Officer Taylor permitted Harper to have a seat on the curb behind his vehicle as they waited for the patrol unit to arrive.  While sitting, Harper removed his hat, ran his finger along the inside brim of it, and flicked a small piece of foil out onto the pavement.  Officer Taylor retrieved the piece of foil and discovered an oxycodone tablet inside.  He handcuffed Harper, and the patrol unit arrived and took Harper to the Wichita County Jail. 

At the jail, Harper was searched and his personal belongings were confiscated.  One of the confiscated items was a ring.  An examination of the ring revealed it harbored a small compartment; two oxycodone tablets were inside the compartment.  

Charged with three counts of possession of a controlled substance, namely hydromorphone (count I—four grams or more but less than two-hundred grams),
(footnote: 1) methadone (count II—one gram or more but less than four grams), and oxycodone (count III—an amount less than one gram), Harper pleaded not guilty to all three counts.  At trial, Rhodessa Harper, Harper’s daughter, testified that she had borrowed her father’s car for a few days.  During this time, it was driven on at least one occasion by her friend, Jackie.  Rhodessa claimed Jackie put the methadone by the dashboard.  A jury subsequently found Harper guilty of counts two and three, and this appeal followed.

III.  Legal & Factual Sufficiency

In points one through four, Harper argues that the evidence is legally and factually insufficient to support his convictions for both counts two and three in the indictment.  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, 
when reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

A person commits an offense if the person knowingly or intentionally possesses a controlled substance, such as methadone or oxycodone.  
Tex. Health & Safety Code Ann.
 § 481.115(a) (Vernon 2003).  To prove unlawful possession of a controlled substance, the State must show that the defendant 
exercised actual care, custody, control, or management over the contraband
 and that he knew the substance in his possession was a controlled substance.  
See id
. § 481.002(38); 
McQuarters v. State
, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref’d).  Evidence supporting these elements may be direct or circumstantial.  
Hudson v. State
, 128 S.W.3d 367, 374 (Tex. App.—Texarkana 2004, no pet.).  When the contraband is not found on the accused’s person or it is not in his or her exclusive possession, additional facts must affirmatively link the accused to the controlled substance.  
Id
.

Circumstances that may link a defendant to the controlled substance include (1) the defendant was present when the search was executed; (2) the contraband was in plain view; (3) the contraband was in close proximity to or accessible by the defendant; (4) the defendant was under the influence of contraband; (5) the defendant was in possession of other contraband when he was arrested; (6) the defendant made incriminating statements when he was arrested; (7) the defendant attempted to flee; (8) the defendant made furtive gestures; (9) there was an odor of the contraband present at the scene; (10) other contraband or drug paraphernalia were present that were not included in the charge; (11) the defendant owned or had a right to posses the place where the controlled substance was found; and (12) the defendant possessed weapons or large amounts of cash.  
See id
.; 
McQuarters
, 58 S.W.3d at 259.  The number of relevant factors is less significant than the logical force to which they establish a link between the accused and the controlled substance.  
See Taylor v. State
, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).

A.  Count Two—Possession of Methadone

Multiple factors connect Harper to the methadone.  Officer Taylor discovered the methadone in Harper’s vehicle, which Harper was driving at the time officers stopped him and made the discovery.  Harper was the sole occupant of the vehicle, and the methadone was in plain view, easily accessible to him.  An additional narcotic, oxycodone, was later found on Harper’s person. When Officer Taylor placed the methadone on the roof of the car, Taylor demonstrated his knowledge of the contents of the foil packet by stating, “I takes those.”  Harper also said that he did not have a prescription for methadone, and subsequent testimony by Dr. Jerome M. Adams, Harper’s former physician, confirmed this. 

Harper’s sole argument supporting his contention that the evidence is legally and factually insufficient to support his conviction for possession of methadone is that the methadone belonged to Jackie, Rhodessa’s friend, and that Jackie had left the methadone in the car after driving it recently.  
The jury, however, apparently disbelieved Rhodessa’s testimony that Jackie had left the methadone in Harper’s car and concluded that the methadone belonged to Harper.  
Under the appropriate standards of review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses; we cannot sit as a thirteenth juror
, and we may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 481-82
.

Accordingly, viewing all of the evidence in the light most favorable to 
the verdict, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789
.  Moreover,  viewing all the evidence in a neutral light, favoring neither party, we hold that the jury was rationally justified in finding guilt beyond a reasonable doubt; 
the evidence supporting the verdict is not too weak to support the finding of guilt beyond a reasonable doubt, and the contrary evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met.  
Zuniga
, 144 S.W.3d
 at 484-85.  We overrule points one and two.

B.  Count Three—Possession of Oxycodone

While Harper was seated on the curb, Officer Taylor saw him remove his hat, turn it sideways, run his finger along the inside brim, and “flick[] out a very small piece of foil on to the pavement.”  Officer Taylor retrieved the foil and opened it.  Inside he found an oxycodone tablet.  A jailer at the Wichita County Jail likewise discovered two oxycodone tablets inside a ring that he had removed from Harper as part of his processing duties. 

Harper argues that he lawfully possessed the oxycodone because he had a valid prescription for it.  The record does not, however, support this contention.  Dr. Jerome Adams testified that he had prescribed OxyContin
(footnote: 2) to Harper on February 4, 2000 and April 6, 2000 and that Harper’s next appointment was scheduled for June of 2000.  Dr. Adams further testified that he prescribed “probably a quantity of a hundred,” that the typical dose is two tablets per day, and that Harper reported he was taking the medication as prescribed.  On cross-examination, Dr. Adams agreed that Harper should have taken all of the prescribed OxyContin pills by his June 2000 appointment.  Dr. Adams did not write any other prescriptions for Harper for OxyContin.  Thus, the jury was free to conclude that the OxyContin pills Harper possessed on January 30, 2003 were not the same pills as those prescribed by Dr. Adams almost three years earlier in February and April 2000.

V
iewing all of the evidence in the light most favorable to 
the verdict, we hold that a rational trier of fact could have found the essential elements of possession of oxycodone beyond a reasonable doubt.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789
.  
Also, viewing all the evidence in a neutral light, favoring neither party, we hold that the jury was rationally justified in finding guilt beyond a reasonable doubt; 
the evidence supporting the verdict is not too weak to support the finding of guilt beyond a reasonable doubt, and the contrary evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met.  
Zuniga
, 144 S.W.3d
 at 484-85.  We overrule Harper’s third and fourth points.
 

IV.  Failure to Preserve Error

We note at the outset that t
he State contends Harper’s fifth through eighth points are not preserved for our review.  
In his fifth and sixth points, Harper argues that the trial court erred by not suppressing his comment to Officer Taylor that he did not have a prescription for the methadone pills found in his vehicle.  Harper contends that he was under arrest at the time Officer Taylor asked him if he had a prescription, and that because he had not been given 
Miranda 
warnings Officer Taylor’s question was improper and was designed to elicit an incriminating response.  In his seventh and eighth points, Harper claims that the prosecutor engaged in improper argument by striking at him over the shoulders of his counsel, denying him due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Texas Constitution. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  Even constitutional errors may be waived by the failure to object at trial.  
See Curry v. State
, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995). 

Here, Harper did not file a motion to suppress his answer to Officer Taylor’s question and did not object at trial when Officer Taylor testified concerning the question and answer.  Accordingly, Harper forfeited appellate review of points five and six.  
See 
Tex. R. App. P.
 33.1(a).  We overrule points five and six.

Likewise, Harper lodged no objection to the prosecutor’s allegedly improper comments during closing argument.  Consequently, he may not complain of them for the first time on appeal because error has not been preserved.  
See id
.
  We overrule points seven and eight.

V.  Ineffective Assistance of Counsel

In his ninth and final point, Harper argues that his trial counsel was ineffective because he did not move to suppress the “non-mirandized custodial statements” made to Officer Taylor, he failed to object to the prosecutor’s comments striking at him over the shoulders of his counsel, and he did not sever count one in the indictment from the remaining two counts. 

We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that 
his
 counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 813.  Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Id.
 at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

A.  Failure To Seek Suppression of Harper’s Statements

Harper argues that his trial counsel’s failure to move to suppress his statements to Officer Taylor after the methadone was discovered in his vehicle was “objectively unreasonable.”  He states, “Those non-mirandized statements are the only evidence that remotely provided the affirmative link between Appellant and the controlled substance found in Appellant’s automobile. . . .  Had trial counsel properly suppressed the statement, there would be no doubt that the conviction in Count II would have to be reversed.”  We cannot agree.  Other evidence, in addition to Harper’s statement, links him to the methadone.  
Harper was the sole occupant of the vehicle, and the methadone was in plain view, easily accessible to him
.  

Moreover, in considering an ineffective assistance of counsel claim, an appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  
See Stafford v. State
, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).  S. Price Smith, Harper’s trial attorney, explained at Harper’s motion for new trial hearing that his decision not to suppress Harper’s statements was a strategic decision.  He testified,

And count two, the defense that I was presenting to count two had to do with the fact that the methadone had been placed in the car the night before by - - when Rhodessa Harper and her friend, Jackie Harrison, had borrowed the car to go to an NA meeting.  And that the methadone had been left in the car wrapped in tinfoil by Jackie Harrison from the night before.  And that it was found in the same place or nearly the same place the next day when Grady was in the car.

He continued,

So it was not a question of does he have a prescription or not.  It was more a question of whether or not he had knowledge of what it was and that it was there.  And then plus I knew I was going to call the doctor later on in the trial who has - - had all of his prescriptions, and methadone wasn’t one of them.  So I didn’t see the harm in that.

Additionally, Harper’s statement, “I takes those,” was volunteered to Officer Taylor before any questioning of Harper.  The statement was not the result of custodial interrogation, and, arguably, any defense objection to the statement would have been denied and would have called unnecessary attention to the statement.  
Accordingly, we hold that the record here is insufficient to overcome the presumption that counsel’s 
decision not to seek suppression of Harper’s statements to Officer Taylor was the result of a sound, strategic decision; 
the record does not establish Smith’s decision constituted deficient performance under 
Strickland’s 
first prong.

B.  Failure To Object To Improper Jury Argument

Harper further argues that his trial counsel was ineffective because he failed to object to the prosecutor’s alleged improper jury argument during closing argument.  The prosecutor argued, 

Mr. Smith has a job to do.  Mr. Smith’s job is to take this picture, which I told you would be simple and clear, and he needs to muddy it up for you to confuse you.  How is he going to do it?  He’s going to throw as much dirt on that picture as he can so you can’t see a clear picture.  That’s his job, folks.  That’s what he’s here to do.  I want you to be cognizant of that as I talk to you.

At Harper’s motion for new trial, Smith again explained his reason for not objecting to this line of argument.  He stated,

I didn’t object to that particular phrase - - as a matter of fact I don’t object to those types of arguments because, as you pointed out, it has been my experience that statements such as that that are of basically a derogatory nature aimed at the defense counsel, does - - does have a tendency to basically offend jurors and oftentimes - - more times than not in my experience has worked to the advantage of the defendant.

Thus, Smith, based on his professional experience, reasoned that an objection to the prosecutor’s statements was unnecessary considering the counter-productive nature inherent in such statements.  Accordingly, the evidence in the record fails to rebut the presumption that Smith’s actions resulted from sound trial strategy.  The 
Strickland 
effectiveness standard does not guarantee perfect or error-free counsel, and the fact that another attorney might have pursued an alternate course of action during trial will not support a finding of ineffectiveness.  
Ex parte Felton
, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991); 
Blott v. State
, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979).  The record here does not establish that Smith’s failure to object to the prosecutor’s alleged improper argument constituted deficient performance under 
Strickland’s 
first prong.

C.  Failure To Sever Count One

Harper lastly argues that his trial counsel was ineffective because he did not sever count one from counts two and three.  He reasons that evidence admissible for purposes of proving up count one of the indictment (for which Harper was acquitted) influenced the jury in its decision to convict him on counts two and three.  Harper admits, however, that “trial counsel claimed he did not want to subject Appellant to possible stacked counts” as the reason he did not seek to sever count one but contends that “the evidence was such that it would have been unlikely count I would have resulted in a guilty verdict.” Conjecture and speculation underlie this argument.  Trial counsel’s explanation that he did not want to risk subjecting Appellant to stacked counts constitutes a reasonable trial strategy.  Thus, the first prong of 
Strickland 
is not satisfied.  
Strickland
, 466 U.S. at 693, 104 S. Ct. at 2067 (”ineffective assistance of counsel claims are not built on retrospective speculation by reviewing courts”)
; 
Bone v. State
, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).  
We overrule Harper’s ninth point.

VI.  Conclusion

Having overruled all nine of Harper’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 June 30, 2005

FOOTNOTES
1:
We do not discuss the facts surrounding Harper’s alleged possession of this substance because the jury acquitted him of this count and, consequently, Harper raises no appellate challenges concerning this count.

2:
Oxycontin is the trade name for oxycodone.