COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-327-CR
 
 
GRADY 
HARPER                                                                    APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 78TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
        Appellant 
Grady Lee Harper was charged with three counts of possession of a controlled 
substance.  A jury found Harper guilty of counts two and three, and the 
trial court sentenced him to eleven years’ confinement and two years’ 
confinement, respectively.  In nine points, Harper complains that the 
evidence is legally and factually insufficient to support the convictions, that 
the trial court erred by not suppressing a statement made to a police officer, 
that the prosecutor made improper comments during closing argument, and that his 
counsel was ineffective.  We will affirm.
II. Factual 
Background
        On 
the evening of January 30, 2003, police were conducting surveillance of 
Harper’s residence.  At around 10:00 p.m., Harper left in his vehicle, 
and police officers followed him.  Officers stopped Harper after they 
observed him change lanes and turn without signaling.  Harper consented to 
a search of his vehicle.  Officer Taylor found a crumbled up foil packet on 
the dashboard near the speedometer.  Eight tablets marked as Methadone were 
inside the foil packet.  Officer Taylor placed the packet on the roof of 
the car, and Harper, who had been watching, said to him, “I takes 
those.”  Officer Taylor asked Harper if he had a prescription for them; 
Harper replied that he did not.
        A 
patrol unit was requested, and Harper asked if he could sit down because his 
legs hurt.  Officer Taylor permitted Harper to have a seat on the curb 
behind his vehicle as they waited for the patrol unit to arrive.  While 
sitting, Harper removed his hat, ran his finger along the inside brim of it, and 
flicked a small piece of foil out onto the pavement.  Officer Taylor 
retrieved the piece of foil and discovered an oxycodone tablet inside.  He 
handcuffed Harper, and the patrol unit arrived and took Harper to the Wichita 
County Jail.
        At 
the jail, Harper was searched and his personal belongings were 
confiscated.  One of the confiscated items was a ring.  An examination 
of the ring revealed it harbored a small compartment; two oxycodone tablets were 
inside the compartment.
        Charged 
with three counts of possession of a controlled substance, namely hydromorphone 
(count I—four grams or more but less than two-hundred grams),[1] 
methadone (count II—one gram or more but less than four grams), and oxycodone 
(count III—an amount less than one gram), Harper pleaded not guilty to all 
three counts.  At trial, Rhodessa Harper, Harper’s daughter, testified 
that she had borrowed her father’s car for a few days.  During this time, 
it was driven on at least one occasion by her friend, Jackie.  Rhodessa 
claimed Jackie put the methadone by the dashboard.  A jury subsequently 
found Harper guilty of counts two and three, and this appeal followed.
III. Legal 
& Factual Sufficiency
        In 
points one through four, Harper argues that the evidence is legally and 
factually insufficient to support his convictions for both counts two and three 
in the indictment.  In reviewing the legal sufficiency of the evidence to 
support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have 
found the essential elements of the crime beyond a reasonable doubt.  Jackson 
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. 
State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson , 443 U.S. at 319, 
99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and 
credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 
2000).  Thus, when performing a legal sufficiency review, we may not 
re-evaluate the weight and credibility of the evidence and substitute our 
judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).  We must resolve any inconsistencies in the evidence in favor of 
the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
        In 
contrast, when reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party.  See Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 
2004).  The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt.  Id. 
at 484.  There are two ways evidence may be factually insufficient: (1) the 
evidence supporting the verdict or judgment, considered by itself, is too weak 
to support the finding of guilt beyond a reasonable doubt; or (2) when there is 
evidence both supporting and contradicting the verdict or judgment, weighing all 
of the evidence, the contrary evidence is so strong that guilt cannot be proven 
beyond a reasonable doubt.  Id. at 484-85.  “This standard 
acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.”  Id. at 485.  In other words, evidence 
supporting a guilty finding can outweigh the contrary proof but still be 
insufficient to prove the elements of an offense beyond a reasonable 
doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s.  Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87.  An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        A 
person commits an offense if the person knowingly or intentionally possesses a 
controlled substance, such as methadone or oxycodone. Tex. Health & Safety Code Ann. § 
481.115(a) (Vernon 2003).  To prove unlawful possession of a controlled 
substance, the State must show that the defendant exercised actual care, 
custody, control, or management over the contraband and that he knew the 
substance in his possession was a controlled substance.  See id. § 
481.002(38); McQuarters v. State, 58 S.W.3d 250, 259 (Tex. App.—Fort 
Worth 2001, pet. ref’d).  Evidence supporting these elements may be 
direct or circumstantial.  Hudson v. State, 128 S.W.3d 367, 374 
(Tex. App.—Texarkana 2004, no pet.).  When the contraband is not found on 
the accused’s person or it is not in his or her exclusive possession, 
additional facts must affirmatively link the accused to the controlled 
substance.  Id.
        Circumstances 
that may link a defendant to the controlled substance include (1) the defendant 
was present when the search was executed; (2) the contraband was in plain view; 
(3) the contraband was in close proximity to or accessible by the defendant; (4) 
the defendant was under the influence of contraband; (5) the defendant was in 
possession of other contraband when he was arrested; (6) the defendant made 
incriminating statements when he was arrested; (7) the defendant attempted to 
flee; (8) the defendant made furtive gestures; (9) there was an odor of the 
contraband present at the scene; (10) other contraband or drug paraphernalia 
were present that were not included in the charge; (11) the defendant owned or 
had a right to posses the place where the controlled substance was found; and 
(12) the defendant possessed weapons or large amounts of cash.  See id.; 
McQuarters, 58 S.W.3d at 259.  The number of relevant factors is 
less significant than the logical force to which they establish a link between 
the accused and the controlled substance.  See Taylor v. State, 106 
S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).
        A. Count Two—Possession of Methadone
        Multiple 
factors connect Harper to the methadone.  Officer Taylor discovered the 
methadone in Harper’s vehicle, which Harper was driving at the time officers 
stopped him and made the discovery.  Harper was the sole occupant of the 
vehicle, and the methadone was in plain view, easily accessible to him.  An 
additional narcotic, oxycodone, was later found on Harper’s person.  When 
Officer Taylor placed the methadone on the roof of the car, Taylor demonstrated 
his knowledge of the contents of the foil packet by stating, “I takes 
those.”  Harper also said that he did not have a prescription for 
methadone, and subsequent testimony by Dr. Jerome M. Adams, Harper’s former 
physician, confirmed this.
        Harper’s 
sole argument supporting his contention that the evidence is legally and 
factually insufficient to support his conviction for possession of methadone is 
that the methadone belonged to Jackie, Rhodessa’s friend, and that Jackie had 
left the methadone in the car after driving it recently.  The jury, 
however, apparently disbelieved Rhodessa’s testimony that Jackie had left the 
methadone in Harper’s car and concluded that the methadone belonged to 
Harper.  Under the appropriate standards of review, we are to give 
deference to the fact finder’s determinations, including determinations 
involving the credibility and demeanor of witnesses; we cannot sit as a 
thirteenth juror, and we may not substitute our judgment for that of the fact 
finder’s.  Zuniga, 144 S.W.3d at 481-82.
        Accordingly, 
viewing all of the evidence in the light most favorable to the verdict, we hold 
that a rational trier of fact could have found the essential elements of the 
offense beyond a reasonable doubt.  Jackson, 443 U.S. at 319, 99 S. 
Ct. at 2789.  Moreover, viewing all the evidence in a neutral light, 
favoring neither party, we hold that the jury was rationally justified in 
finding guilt beyond a reasonable doubt; the evidence supporting the verdict is 
not too weak to support the finding of guilt beyond a reasonable doubt, and the 
contrary evidence is not so strong that the beyond-a-reasonable-doubt standard 
could not have been met.  Zuniga, 144 S.W.3d at 484-85.  We 
overrule points one and two.
        B. 
Count Three—Possession of Oxycodone
        While 
Harper was seated on the curb, Officer Taylor saw him remove his hat, turn it 
sideways, run his finger along the inside brim, and “flick[] out a very small 
piece of foil on to the pavement.”  Officer Taylor retrieved the foil and 
opened it. Inside he found an oxycodone tablet.  A jailer at the Wichita 
County Jail likewise discovered two oxycodone tablets inside a ring that he had 
removed from Harper as part of his processing duties.
        Harper 
argues that he lawfully possessed the oxycodone because he had a valid 
prescription for it.   The record does not, however, support this 
contention. Dr. Jerome Adams testified that he had prescribed OxyContin[2] to Harper on February 4, 2000 and April 6, 2000 and that 
Harper’s next appointment was scheduled for June of 2000.  Dr. Adams 
further testified that he prescribed “probably a quantity of a hundred,” 
that the typical dose is two tablets per day, and that Harper reported he was 
taking the medication as prescribed.  On cross-examination, Dr. Adams 
agreed that Harper should have taken all of the prescribed OxyContin pills by 
his June 2000 appointment.  Dr. Adams did not write any other prescriptions 
for Harper for OxyContin. Thus, the jury was free to conclude that the OxyContin 
pills Harper possessed on January 30, 2003 were not the same pills as those 
prescribed by Dr. Adams almost three years earlier in February and April 2000.
        Viewing 
all of the evidence in the light most favorable to the verdict, we hold that a 
rational trier of fact could have found the essential elements of possession of 
oxycodone beyond a reasonable doubt.  Jackson, 443 U.S. at 319, 99 
S. Ct. at 2789.  Also, viewing all the evidence in a neutral light, 
favoring neither party, we hold that the jury was rationally justified in 
finding guilt beyond a reasonable doubt; the evidence supporting the verdict is 
not too weak to support the finding of guilt beyond a reasonable doubt, and the 
contrary evidence is not so strong that the beyond-a-reasonable-doubt standard 
could not have been met.  Zuniga, 144 S.W.3d at 484-85.  We 
overrule Harper’s third and fourth points.
IV. Failure to 
Preserve Error
        We 
note at the outset that the State contends Harper’s fifth through eighth 
points are not preserved for our review.  In his fifth and sixth points, 
Harper argues that the trial court erred by not suppressing his comment to 
Officer Taylor that he did not have a prescription for the methadone pills found 
in his vehicle. Harper contends that he was under arrest at the time Officer 
Taylor asked him if he had a prescription, and that because he had not been 
given Miranda warnings Officer Taylor’s question was improper and was 
designed to elicit an incriminating response.  In his seventh and eighth 
points, Harper claims that the prosecutor engaged in improper argument by 
striking at him over the shoulders of his counsel, denying him due process and a 
fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United 
States Constitution and Article I, Section 10 of the Texas Constitution.
        To 
preserve a complaint for our review, a party must have presented to the trial 
court a timely request, objection, or motion that states the specific grounds 
for the desired ruling if they are not apparent from the context of the request, 
objection, or motion.  Tex. R. App. 
P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. 
App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999).  
Further, the trial court must have ruled on the request, objection, or motion, 
either expressly or implicitly, or the complaining party must have objected to 
the trial court’s refusal to rule. Tex. R. App. P. 33.1(a)(2); Mendez v. 
State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  Even constitutional 
errors may be waived by the failure to object at trial.  See Curry v. 
State, 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995).
        Here, 
Harper did not file a motion to suppress his answer to Officer Taylor’s 
question and did not object at trial when Officer Taylor testified concerning 
the question and answer.  Accordingly, Harper forfeited appellate review of 
points five and six.  See Tex. 
R. App. P. 33.1(a).  We overrule points five and six.
        Likewise, 
Harper lodged no objection to the prosecutor’s allegedly improper comments 
during closing argument.  Consequently, he may not complain of them for the 
first time on appeal because error has not been preserved.  See id.  
We overrule points seven and eight.
V. Ineffective 
Assistance of Counsel
        In 
his ninth and final point, Harper argues that his trial counsel was ineffective 
because he did not move to suppress the “non-mirandized custodial 
statements” made to Officer Taylor, he failed to object to the prosecutor’s 
comments striking at him over the shoulders of his counsel, and he did not sever 
count one in the indictment from the remaining two counts.
        We 
apply a two-pronged test to ineffective assistance of counsel claims.  Strickland 
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson 
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant 
must show that his counsel's performance was deficient; second, appellant must 
show the deficient performance prejudiced the defense.  Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.
        In 
evaluating the effectiveness of counsel under the first prong, we look to the 
totality of the representation and the particular circumstances of each 
case.  Thompson, 9 S.W.3d at 813.  The issue is whether 
counsel's assistance was reasonable under all the circumstances and prevailing 
professional norms at the time of the alleged error.  See Strickland, 
466 U.S. at 688-89, 104 S. Ct. at 2065. “[C]ounsel is strongly presumed to 
have rendered adequate assistance and made all significant decisions in the 
exercise of reasonable professional judgment.”  Id. at 690, 104 S. 
Ct. at 2066.  An allegation of ineffective assistance must be firmly 
founded in the record, and the record must affirmatively demonstrate the alleged 
ineffectiveness.  Thompson, 9 S.W.3d at 813.  Our scrutiny of 
counsel's performance must be highly deferential, and every effort must be made 
to eliminate the distorting effects of hindsight.  Strickland, 466 
U.S. at 689, 104 S. Ct. at 2065.
        The 
second prong of Strickland requires a showing that counsel's errors were 
so serious that they deprived the defendant of a fair trial, i.e., a trial whose 
result is reliable.  Id. at 687, 104 S. Ct. at 2064.  In other 
words, appellant must show there is a reasonable probability that, but for 
counsel's unprofessional errors, the result of the proceeding would have been 
different. Id. at 694, 104 S. Ct. at 2068.  A reasonable probability 
is a probability sufficient to undermine confidence in the outcome.  Id. 
 The ultimate focus of our inquiry must be on the fundamental fairness of 
the proceeding whose result is being challenged.  Id. at 697, 104 S. 
Ct. at 2070.
        A. Failure To Seek Suppression of Harper’s 
Statements
        Harper 
argues that his trial counsel’s failure to move to suppress his statements to 
Officer Taylor after the methadone was discovered in his vehicle was 
“objectively unreasonable.”  He states, “Those non-mirandized 
statements are the only evidence that remotely provided the affirmative link 
between Appellant and the controlled substance found in Appellant’s 
automobile. . . . Had trial counsel properly suppressed the statement, there 
would be no doubt that the conviction in Count II would have to be 
reversed.”  We cannot agree.  Other evidence, in addition to 
Harper’s statement, links him to the methadone.  Harper was the sole 
occupant of the vehicle, and the methadone was in plain view, easily accessible 
to him.
        Moreover, 
in considering an ineffective assistance of counsel claim, an appellant must 
overcome the presumption that, under the circumstances, the challenged action 
might be considered sound trial strategy.  See Stafford v. State, 
813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).  S. Price Smith, Harper’s 
trial attorney, explained at Harper’s motion for new trial hearing that his 
decision not to suppress Harper’s statements was a strategic decision.  
He testified,
  
And count two, the defense that I was presenting to count two had to do with the 
fact that the methadone had been placed in the car the night before by - - when 
Rhodessa Harper and her friend, Jackie Harrison, had borrowed the car to go to 
an NA meeting.  And that the methadone had been left in the car wrapped in 
tinfoil by Jackie Harrison from the night before.  And that it was found in 
the same place or nearly the same place the next day when Grady was in the car.
 
 
He 
continued,
  
So 
it was not a question of does he have a prescription or not.    
It was more a question of whether or not he had knowledge of what it was and 
that it was there.  And then plus I knew I was going to call the doctor 
later on in the trial who has - - had all of his prescriptions, and methadone 
wasn’t one of them.  So I didn’t see the harm in that.

Additionally, 
Harper’s statement, “I takes those,” was volunteered to Officer Taylor 
before any questioning of Harper.  The statement was not the result of 
custodial interrogation, and, arguably, any defense objection to the statement 
would have been denied and would have called unnecessary attention to the 
statement.  Accordingly, we hold that the record here is insufficient to 
overcome the presumption that counsel’s decision not to seek suppression of 
Harper’s statements to Officer Taylor was the result of a sound, strategic 
decision; the record does not establish Smith’s decision constituted deficient 
performance under Strickland’s first prong.
        B. Failure To Object To Improper Jury Argument
        Harper 
further argues that his trial counsel was ineffective because he failed to 
object to the prosecutor’s alleged improper jury argument during closing 
argument.  The prosecutor argued,
  
Mr. Smith has a job to do.  Mr. Smith’s job is to take this picture, 
which I told you would be simple and clear, and he needs to muddy it up for you 
to confuse you.  How is he going to do it?  He’s going to throw as 
much dirt on that picture as he can so you can’t see a clear picture.  
That’s his job, folks. That’s what he’s here to do.  I want you to be 
cognizant of that as I talk to you.
 
 
At 
Harper’s motion for new trial, Smith again explained his reason for not 
objecting to this line of argument. He stated,
  
I didn’t object to that particular phrase - - as a matter of fact I don’t 
object to those types of arguments because, as you pointed out, it has been my 
experience that statements such as that that are of basically a derogatory 
nature aimed at the defense counsel, does - - does have a tendency to basically 
offend jurors and oftentimes - - more times than not in my experience has worked 
to the advantage of the defendant.
 
 
Thus, 
Smith, based on his professional experience, reasoned that an objection to the 
prosecutor’s statements was unnecessary considering the counter-productive 
nature inherent in such statements.  Accordingly, the evidence in the 
record fails to rebut the presumption that Smith’s actions resulted from sound 
trial strategy.  The Strickland effectiveness standard does not 
guarantee perfect or error-free counsel, and the fact that another attorney 
might have pursued an alternate course of action during trial will not support a 
finding of ineffectiveness.  Ex parte Felton, 815 S.W.2d 733, 735 
(Tex. Crim. App. 1991); Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. 
App. 1979).  The record here does not establish that Smith’s failure to 
object to the prosecutor’s alleged improper argument constituted deficient 
performance under Strickland’s first prong.
        C. Failure To Sever Count One
        Harper 
lastly argues that his trial counsel was ineffective because he did not sever 
count one from counts two and three.  He reasons that evidence admissible 
for purposes of proving up count one of the indictment (for which Harper was 
acquitted) influenced the jury in its decision to convict him on counts two and 
three.  Harper admits, however, that “trial counsel claimed he did not 
want to subject Appellant to possible stacked counts” as the reason he did not 
seek to sever count one but contends that “the evidence was such that it would 
have been unlikely count I would have resulted in a guilty verdict.”  
Conjecture and speculation underlie this argument.  Trial counsel’s 
explanation that he did not want to risk subjecting Appellant to stacked counts 
constitutes a reasonable trial strategy.  Thus, the first prong of Strickland 
is not satisfied.  Strickland, 466 U.S. at 693, 104 S. Ct. at 
2067 (”ineffective assistance of counsel claims are not built on retrospective 
speculation by reviewing courts”); Bone v. State, 77 S.W.3d 828, 835 
(Tex. Crim. App. 2002). We overrule Harper’s ninth point.
VI. Conclusion
        Having 
overruled all nine of Harper’s points, we affirm the trial court’s judgment.
  
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
A:   CAYCE, C.J.; GARDNER and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 30, 2005

 
NOTES
1.  
We do not discuss the facts surrounding Harper’s alleged possession of this 
substance because the jury acquitted him of this count and, consequently, Harper 
raises no appellate challenges concerning this count.
2.  
Oxycontin is the trade name for oxycodone.